---
Passenger *v.* Thorburn.
---

————••••————

## PASSENGER *vs.* THORBURN.

Where a warranty of a thing has reference to a purpose for which it is to be used, the rule of indemnity, on a breach of the warranty, must include the damages which naturally followed, and might be expected to follow, its violation, when the thing warranted is put to the intended and understood use; provided such damages are in their nature certain, and it is also certain that they proceeded from the breach of warranty.

The plaintiff—a market gardener—applied to the defendant for seed of a particular kind of cabbage—the Bristol. The defendant, being acquainted with the plaintiff's business and the purpose for which the seed was wanted, produced some seed, and showed him a sample of the cabbage the seed would produce; said he knew the seed was Bristol cabbage seed, and warranted it as such. The seed being purchased and planted proved not to be of the Bristol cabbage, and produced a crop of but little value. *Held* that

(*a*) *See* 2 *Gray,* 302.

the rule of damages was such loss as the plaintiff could prove he had sustained by the crop, not being, what the warranty in substance said it should be—Bristol cabbage. Hogeboom, J. dissented.

THIS action was brought by the plaintiff, a gardener, against the defendant, a seed merchant, for damages occasioned by breach of contract and misrepresentation, on the sale of a spurious article as Bristol cabbage seed, in the spring of 1857, by which the plaintiff lost his year's crop, the use of his garden of eight acres in the vicinity of Albany, and the expense and labor devoted to its cultivation. The plaintiff alleged in the complaint, that he had for years purchased his seed for gardening purposes from the defendant, who knew his business, and the use for which the seed was purchased; that the defendant was aware that the particular department of the business in which the plaintiff was engaged, was the raising of cabbage for the Albany market; that in the spring of 1857, the defendant, knowing that he wished to purchase Bristol cabbage seed for that purpose, sold him three pounds of seed at $4 a pound, contracting with the plaintiff that it was Bristol cabbage seed, and representing that he knew the fact of his own knowledge, and thereby induced the plaintiff to make the purchase; that the seed was spurious and worthless, as the defendant knew; that the plaintiff, relying on the defendant's contract and representation, prepared his garden for the seed, sowed it, and expended a large sum in its culture; that the crop produced by the spurious seed was almost valueless, not being worth $5 a thousand—whereas, if the seed had been genuine, it would have been worth $25 a thousand; that the season was favorable, the land excellent and adapted to the purpose, and the Bristol cabbage crop good wherever it was sown; that if it had been Bristol cabbage, the crop would have been worth $1100; and that the defendant, after the cabbage had grown, knowing the loss the plaintiff had sustained, promised to compensate him for the damages, to which he had been and would be subjected, in consequence

Passenger *v.* Thorburn.

of the seed being spurious. On the trial, Mr. Justice HARRIS fixed the measure of damages as upon a *rescinded contract,* and directed a verdict for the price of the seed and interest, excluding all other damages. The proof established the following facts: The plaintiff, in 1857, had a cabbage garden of eight acres, on the Van Rensselaer flats above the city, which he had cultivated for about ten years, purchasing his seed of the defendant, who knew the use for which he bought it. In March, 1857, the plaintiff applied to him for Bristol cabbage seed. The defendant professed to have it; but the plaintiff desired to be positive that it was such, before purchasing and sowing it, as he learned that the Shakers were out of that kind of seed, and he hesitated about buying it from the defendant. Thorburn showed him a head of Bristol cabbage as a sample of what the seed would produce. He said, "I *know* it is Bristol cabbage seed. I will warrant it." "I cannot sell you that kind of seed the same as the other; I will have to charge you one dollar more on a pound." "I know this is Bristol cabbage seed. *I know the consequences when I state any thing of that kind, if it is not so."* The plaintiff took the seed on the faith of what he said, and sowed it, appropriating the entire garden to its culture. About one-third of the plants produced what might be called cabbage; the balance was "entirely worthless except for cow feed." Even the one-third produced but "1800 heads." "The remainder had no heads." "The cabbages were very inferior." "Those that were saleable were not worth $10 a thousand on the ground." Bristol cabbage was raised the same season across the river, on similar land, less adapted to its culture. *This was not Bristol cabbage.* Thorburn saw the crop, after it had matured so as to show what it was, and on the plaintiff's offering to sell him the cabbage for $1 a hundred, he said, "They may not turn out as bad as you think; *go on and do the best you can with them, and then come to me and I will make it right."* The plaintiff offered to prove that, if the seed had been genuine, the crop would have

béen *worth* $900 more. The evidence was rejected, and the plaintiff excepted. He offered to prove that he necessarily *expended* $50 an acre in raising the cabbage. This was also rejected, and the plaintiff excepted. He offered to prove that the *use of the land* for the season was worth $50 an acre. The proof was excluded, and the plaintiff excepted. The court decided that he could not recover any thing, except the price paid for the seed, and interest; and to this the plaintiff excepted. The court was requested to submit the question to the jury as to the amount of damages sustained by the plaintiff, but declined, and directed a verdict for $13.68; to each of which rulings the plaintiff separately excepted. A case was made by the plaintiff, embodying the exceptions taken at the trial, which was ordered to be heard in the first instance at the general term.

*John K. Porter,* for the plaintiff. I. The contract was made with reference to the particular use to which the seed was to be applied, and the defendant's undertaking was in direct contemplation of the consequences which would naturally result from its breach. (15 *Eng. Com. Law,* 529, 532, *Best, Ch. J.*)

II. If the defendant *could* warrant the plaintiff against the damages naturally resulting from the breach, he *did so,* upon the undisputed evidence in this case. (1.) He knew the intended use of the seed, and the practical consequences if it should prove spurious. (2.) After the breach he admitted his liability, and promised to indemnify the plaintiff. (*Brewster* v. *Countryman,* 12 *Wend.* 446, 449.)

III. Where an article of this or an analogous nature is sold, with reference to reproduction in another form, and its adaptation to a special purpose, the measure of damages upon the warranty is the actual loss, directly resulting as a natural and probable consequence from applying it to the use contemplated; this being "*of the very essence of the warranty.*" (8 *Taunt.* 537, *Dallas, Ch. J.*) (1.) The distinction

Passenger *v.* Thorburn.

between cases of warranty with reference to a *particular purpose,* and those of *mere general warranty,* is obvious, clear and definite. (*Hargous* v. *Ablon,* 5 *Hill,* 473, 474. *Story on Sales,* § 371.) (2.) Thus the warrantor of a chain cable was held liable for £350, the value of an anchor lost by its insufficiency. (*Borradaile* v. *Brunton,* 8 *Taunton,* 534.) (3.) So where "*old cone wheat*" was *for seed,* warranty that it would grow, it was held that upon a count averring the facts, the measure of damages was not the *price of the seed,* but the *value of a fair crop* of straw and grain, which it should have produced. (*Page* v. *Pavey,* 34 *Eng. Com. Law,* 628.) (4.) So where "*scarlet cuttings*" of cloth were sold, destined for the China market, it was held that the test was, not the difference in value between the genuine and spurious article, but the loss thrown upon the vendee in China. Lord Ellenborough said the test was the China market, and "the value the plaintiff would have received *had the defendant performed his contract.*" (*Bridge* v. *Wain,* 2 *id.* 486.) (5.) Where a rope maker without fraud sold a rope, knowing that it was to be used in raising a pipe of wine from a cellar, it was held that there was an implied warranty of fitness, and a verdict for £40, the value of the wine lost by its insufficiency, was sustained by the queen's bench. (*Brown* v. *Edgington,* 40 *id.* 371, 373, 377.)

IV. The true principle is, that the vendee is to receive *indemnity,* and what *is* indemnity, depends upon the subject of sale, the question whether it was sold with reference to a particular purpose, and the natural and probable damage from a breach contemplated by the parties to the warranty.

V. The court erred in excluding from the consideration of the jury the evidence introduced and offered on the question of damages. (1.) The plaintiff lost *the use of his land*—at all events, two-thirds of the eight acres—and this was certain, direct and immediate damage, for which the plaintiff was clearly entitled to recover. (*Griffin* v. *Colver,* 16 *N. Y. Rep.* 489. *Dewint* v. *Wiltse,* 9 *Wend.* 325.) (2.) He lost

his *crop*, and should have been permitted to prove the extent of the loss. (*Page* v. *Pavey*, 34 *Com. Law*, 628. *Borradaile* v. *Brunton*, 8 *Taunt*. 534.) (3.) He was not permitted to prove the actual expenses incurred on the faith, and lost by the breach, of the warranty. (*Driggs* v. *Dwight*, 17 *Wend.* 71. *Pennell* v. *Woodburn*, 32 *Eng. Com. Law*, 462.)

*A. J. Parker*, for the defendant. This was not an action for fraud, but for breach of warranty. No fraudulent design is alleged in the complaint, and there is no pretense that any *scienter* was proved. The only question is, what is the rule of damages on a breach of warranty in the sale of garden seeds. In all cases of breach of warranty on the sale of personal property, the measure of damages is the difference between the actual value and the value which the article would have possessed if it had conformed to the warranty. (*Muller* v. *Eno*, 4 *Kern.* 597. 2 *Kent's Com.* 614, *note. Sedg. on Damages*, 290.) This rule is universal, as applicable to sales of every species of chattel. (*Cary* v. *Gruman*, 4 *Hill*, 625, 629. *Comstock* v. *Hutchinson*, 10 *Barb.* 211. *Tuttle* v. *Brown*, 4 *Gray*, 457. *Moulton* v. *Scruton*, 39 *Maine Rep.* 287. *Blodget* v. *Broughton*, 1 *Kelly's Ga. Rep.* 591. *McGavock* v. *Wood*, 1 *Sneed's Tenn. Rep.* 181. *Reggis* v. *Braggiotti*, 7 *Cush.* 166. *Marshall* v. *Wood*, 16 *Alab. Rep.* 806. *Worthy* v. *Patterson*, 20 *id.* 72. *Anderson* v. *Duffield*, 8 *Texas Rep.* 237. *Stearns* v. *McCullough*, 18 *Missouri Rep.* [3 *Bennet*,] 411.) What use the vendor intends to make or does make of the article purchased, does not affect the question. In *Muller* v. *Eno*, (4 *Kern*, 598,) it was held that the purchaser may recover for the breach, although he has sold the goods and no claim has been made on him, and he is liable for none, on account of the alleged defect. And the reason is given by Judge Comstock on page 605. He says, " the rule of compensation is now well settled, and this compensation, it should be added, is due immediately, when the warranty relates to the soundness or quality of the article

sold. The promise is not one of indemnity against loss on a resale, &c. The promise is broken as soon as made, *although the defect may not then be known,"* &c. In this case there was a breach of the warranty as soon as the seeds were delivered to the plaintiff, though neither party then knew of the defect. All the damages had then accrued, and it made no difference whether the plaintiff sold the seeds or planted them. The rule of damages, in either case, would be the same. The right of damages for a breach of warranty has reference to *market value* only. The question is not how much will the seeds produce if planted, but what were they worth; that is to say, what is their market value. The seeds could not be worth less than nothing, and the full value was recovered as damages. Proof that they did not grow was only proper for the purpose of proving them worthless. It is necessary to have a fixed rule of damages applicable to all kinds of property; without it the law would be uncertain and arbitrary. Suppose a warranty of some article of provisions, which proves unsound and worth nothing. All that can be recovered is the difference in value between sound provisions and those worthless; that is to say, the recovery will be for the value of the article sold. The money paid will be recovered back with interest. And this is all that could be recovered back on a mere warranty of quality and kind, though it happened that the purchaser ate of the provisions and was made sick in consequence, and lost much time and paid large physicians' bills. Neither speculative profits nor consequential losses can be recovered. (2 *Kent's Com.* 615, *n. Lattin* v. *Davis, Lalor's Sup.* 9. 4 *Barb.* 261. 6 *id.* 423.)

GOULD, J. Taking the present rule of damages (to be recovered for the breach of any contract) to be " that the party injured is entitled to recover *all* his damages, including gains prevented as well as losses sustained; within these limits, 1st. The damages must be such as may fairly be supposed to have entered into the contemplation of the parties,

when they made the contract—that is, must be *such as might naturally be expected to follow its violation;* and 2dly. They must be certain in their nature, and in respect to the cause from which they proceed;" (16 *N. Y. Rep.* 494, 495;) and that a warranty concerning a thing, being *general, or not having reference to any purpose for which it is to be used* out of the ordinary course, the law does not go beyond the general market for *indemnity against* its breach. (5 *Hill,* 473.) It seems to me to follow, on principle, that where a warranty of a thing *has* "reference to a purpose for which it is to be used," the rule of indemnity for the broken contract of warranty must bring in the damages which *naturally* did follow, and "might naturally be expected to follow its violation," when the thing warranted is put to the *intended and understood use; if* they are in their nature certain, (to a reasonable intent,) *and* it is also certain that they proceeded from the breach of warranty. This is certainly the doctrine of many English cases. (8 *Taunt.* 534, 537. *Page* v. *Pavey,* 34 *Eng. Com. Law Rep.* 628. *Brown* v. *Edgington,* 40 *Eng. Com. Law Rep.* 371.)

Under these rules, the case before us stands thus: The plaintiff applied to the defendant for seed of a particular kind of cabbage—a valuable kind. The plaintiff's business was raising vegetables for the city market; and he wished the seed for planting to raise cabbages in his market garden; and the defendant was acquainted with his business and the purpose of his buying the seed. The defendant showed to the plaintiff "*a sample of cabbage the seed would produce;*" said he knew the seed was Bristol cabbage seed, and warranted it as such. The defendant was entirely honest in so warranting; as he relied on his vendor. The plaintiff bought the seed. Had they been Bristol cabbage seed, they would have produced what the defendant said they would produce— Bristol cabbage. The plaintiff planted the seed, and cultivated the plants which that seed produced; and they proved

not to be Bristol cabbage; and to be worth little—not the cost of raising them.

It seems to me the rule of damages must be such loss as the plaintiff can clearly prove he sustained by the crop's not being what the warranty, in substance, said it should be, Bristol cabbage; and that, therefore, there should be a new trial.

PECKHAM, J. concurred.

HOGEBOOM, J. (dissenting.) Whatever may be the form of action set forth in the complaint—whether it be warranty—or fraud—or a mixture of both—it is clear upon the evidence that no fraud was established; nor was it pretended to be, by the plaintiff. The only question therefore is, was the warranty a general one, that the seed was Bristol cabbage seed, or was it a special one, that it would produce good Bristol cabbage on being sown by the purchaser upon land appropriated by him to the raising of that vegetable? If the former, then it must be conceded that the judge's ruling, at the circuit, was at least sufficiently favorable to the plaintiff; for it not only allowed him the difference between the value of Bristol cabbage seed and the value of the seed actually purchased, but the entire value of a similar quantity of good Bristol cabbage seed. On the other hand, if the seed was sold with a warranty that it should serve the purpose of producing to the plaintiff a crop of good Bristol cabbage upon being sown by him with that object, then a more enlarged rule of damages would be proper.

It was therefore a question of *fact.* And it is evident from the rulings of the judge that he decided or *assumed* that the warranty was a general, and not a special one. And I do not see that the plaintiff asked to go to the jury on this question of fact, which I think he ought to have done if he desired to avail himself of the point, afterwards. He offered, it is true, certain evidence as to the amount of damage, some

of which, it may be conceded, would have been proper if the warranty had been a special one, of the kind above referred to, but was wholly out of place if, as the judge assumed, the warranty was a general one. The plaintiff further requested the court to submit the question to the jury as to the amount of loss, if any, the plaintiff had sustained by the warranty or misrepresentation, and the judge refused. But in this I think there was no error; for there was no misrepresentation; and as to the warranty, there was no occasion to submit the question to the jury as to the amount of loss, if the judge allowed the plaintiff more than, according to the true rule of damages, he could legally require.

But assuming the question to be an open one, as to which kind of warranty it was, I am of opinion that there was no sufficient evidence of a special warranty. It was quite true, upon the evidence, that the plaintiff was a gardener and had been in the habit of buying seeds of the defendant for several years, and that the defendant knew the plaintiff's occupation; but that does not show the sale of the seed to have been for the purpose of cultivation by the defendant—much less that the warranty was of that character. And assuming that the defendant showed the plaintiff a sample of cabbage the seed would produce, and that this amounted to a warranty, it yet fails to make out that the *defendant* warranted that the seed, being sowed by the plaintiff upon land devoted to that object, would produce good Bristol cabbage, and that such warranty was made with the knowledge or understanding by the defendant that the plaintiff bought for that purpose and would devote it to that object. There is nothing, I think, that aids the plaintiff, in the fact that the defendant said he knew it to be Bristol cabbage seed, and knew the consequences of a breach of warranty; nor in the subsequent declaration that he would make it right.

This is the substance of the evidence relied on to establish a special warranty; and I think it insufficient to show that the defendant intended a warranty of that description, and

insufficient to visit upon him the extraordinary damages claimed to flow from a breach of this contract. We can scarcely suppose the defendant would have made such a special warranty; especially if he knew, as he said he did, the grave consequences which were to flow from a breach of it.

[ALBANY GENERAL TERM, March 5, 1860.  *Gould, Hogeboom* and *Peckham,* Justices.]