## FLICK VS. WETHERBEE.

*Covenant, in lease of farming land, to supply good seed—Damages for breach.*

1.  The lessor of farming land, who has covenanted to supply the seed, is bound to furnish *good* seed.
2.  Where the lessee in such a case objected to the quality of certain seed furnished, and the lessor insisted upon its being used, agreeing, if the seed was defective, to assume the whole risk of a failure of the crop, it was not error, in an action by the lessee for the damages by reason of a partial failure, to instruct the jury that "the measure of damages would be the profit of the crop if the seed had been good." This must be understood as meaning the difference between the value of a crop from good seed and the value of that actually raised.
3.  What the true measure of damages for breach of such a covenant would be, in the absence of any such special agreement to take the whole risk, *dubitatur*.

APPEAL from the Circuit Court for *Dane* County.

This action was commenced before a justice for the balance of an account between the parties; and in the plaintiff's bill of particulars the largest item charged to defendant was—"Damage from bad seed corn, and from cattle eating what corn did grow—$100." The answer contained a general denial. The plaintiff cultivated a farm as lessee of the defendant for one year from September 15, 1863; and the indenture of lease put

in evidence contained a covenant by the defendant "to supply all the seed for said farm." The testimony as to the seed corn furnished was as follows: Plaintiff as a witness for himself said, "I got my ground ready for planting corn, and sent word to *Mr. Wetherbee* for seed corn. There were sixteen or seventeen acres of corn land. I sent word to him, and did not get it for three days. I then went to his tenant's house, and we picked out corn. Ferguson was present. I told him I did not think it would grow. I did not like to risk it. He said 'I will risk it.' I planted it. It did not come. After waiting a number of days, I planted other seed on the same portion of ground; that came, but it was so young that it did not get ripe. What came of the first planting was good corn. If I had had good seed in proper time, should have had corn. Corn around me would average fifty bushels per acre; was worth eight shillings per bushel. The seed lay two weeks after the last planting before it came up." On cross-examination: "I prepared my ground for corn, and had it ready to plant about the 12th of May. I told Mr. Ferguson to tell defendant I wanted corn. When he came, we assorted it at the granary together. The granary was on his place, about one-fourth of a mile from the place where I lived. Got about one and a half bushels of seed corn, the quantity I wanted. It was not wet weather; was dry immediately after. I went to see if it was sprouting three or four days after planting. I can't state at what time I planted the second time; it was in June." David Ferguson, for plaintiff: "I was present at the selection of seed corn. *Flick* told *Wetherbee* he did not think the corn would grow. *Wetherbee* said he would risk it. *Flick* said, 'Very well, if you will, I will plant it.' The corn was planted. A little of it grew. The ground was good and was well worked. His second planting was the fifth or sixth of June. Land of about the same kind about half a mile off yielded fifty or sixty bushels of corn per acre." On cross-examination: "I raised the corn that was furnished *Flick*; raised it on *Wetherbee's*

land; was his tenant. I sold it for seed corn." The defendant, as a witness for himself: "The seed corn was taken out of the corn crib. Ferguson and *Flick* said they would like the corn from another part of the crib. I may have said that I would run the risk." The defendant also introduced evidence tending to show that the failure of the plaintiff's crop in 1864 was probably due in whole or in part to the character of the season.

The court instructed the jury as follows: "If you find that the failure of the crop was in consequence of the poor seed furnished by the defendant, then you will determine whether the defendant is liable to the plaintiff for the damage thus occasioned. The lease imposed upon the defendant the obligation to furnish good seed. * * This imposed upon him the necessity of exercising ordinary care and skill in selecting the seed, and if he did so, and the seed was apparently good, but failed to grow in consequence of some latent defect, I do not think he would be liable. But if you should find that when the seed came to be selected, the plaintiff informed the defendant that he thought it poor, and objected to taking it, and the defendant thereupon insisted upon his so doing, agreeing to assume the risk of a failure of the crop, if the seed was defective, so far as himself was concerned and the plaintiff also, then I think he would be liable to the plaintiff. * * If you find the plaintiff entitled to recover on this branch of the case, I think his measure of damages will be the profit of the crop if the seed had been good." The court also refused an instruction asked by the defendant, "that the rule of damages was the market price of good seed corn."

Verdict for the plaintiff; which the defendant moved to set aside for error in the instructions, and insufficiency of evidence, and on other grounds. The motion was denied; and from a judgment on the verdict, defendant appealed.

*J. H. Carpenter*, for appellant, to the point that the rule of damages laid down by the circuit judge was erroneous, cited 1

Gallison, 314; 3 Wheat., 546; *Boyd v. Brown*, 17 Pick., 453; *Blanchard v. Ely*, 21 Wend., 342; *Thompson, v. Shattuck*, 2 Met., 615; *Hayden v. Cabot*, 17 Mass., 169; *Dorwin v. Potter*, 5 Denio, 306; *Hargous v. Ablon*, 5 Hill, 473; *Brayton v. Chase*, 3 Wis., 456; *Bradley v. Denton*, id., 557; Sedgw. on Dam., 68–81. Counsel also argued that the evidence was wholly insufficient to warrant the verdict.

*Welch & Kissam*, contra, cited *Passenger v. Thorburn*, 35 Barb., 23; *Griffin v. Colver*, 16 N. Y., 493; *Hadley v. Baxendale*, 26 Eng. L. & E., 398; 34 E. C. L., 628; 40 id., 371.

COLE, J. There can be no doubt that the lease offered in evidence imposed upon the appellant the duty of furnishing good seed corn; but what is the proper rule of damages for a breach of the contract in this particular, is a question of considerable difficulty. On the part of the respondent it is claimed, that the tenant is to receive indemnity, and consequently should recover the loss which he has sustained from the defective seed, or in other words, the difference between the crop which was raised and a good crop of corn. On the other hand, it is objected that this rule is inadmissible, since it in effect permits the tenant to recover the anticipated profits of a crop of corn, which are in their nature too contingent and speculative, and too dependent upon the chances of the market and the changes of the weather, to enter into a safe and reasonable estimate of the damages. Nothing, it is said, is more uncertain than profits anticipated from a crop of corn, which is liable to be cut off or injured by drouth, storms or frosts, or to be destroyed by cattle, and even when grown is subject to the fluctuations of markets and chances of trade; and hence the proper measure of damages is the price of good seed corn and interest, excluding all other damages. I confess I have been in considerable doubt upon the subject, and I am not now clear as to what rule should be adopted. We find the remark frequently made by the authorities, that speculative profits are

not allowed in the estimate of damages for the breach of a contract; yet precisely what is meant by this language it is a little difficult to say. See Sedgwick on Damages (3d ed.), p. 72. But it is perhaps not now necessary to go into a discussion of the general question as to how far courts have gone in the denial of profits by the way of damages, as my brethren are clear that this case may be safely disposed of upon its special circumstances. I have some doubt upon that point likewise, but I am disposed to defer to their opinions. There was evidence offered which tended to show that when the · seed corn was selected from the crib, the respondent objected to receiving it, saying that he did not think it would grow, and that the appellant said he would take the risk of its being good seed. The circuit court, in effect, charged the jury that if they found that when the seed was selected the respondent informed the appellant that he thought it poor, and objected to taking it, and the appellant insisted upon his so doing, agreeing to assume the risk of the failure of a crop if the seed was defective, as well for himself as for the respondent, then he was liable for what the proof showed might have been raised if the seed corn had been good. This instruction obviously goes upon the assumption that the jury might find from the evidence that there was a special warranty that the seed planted was good, and that if it proved to be defective the appellant undertook and agreed to become liable for all the loss which might result therefrom—in other words, for the loss of the crop. The doubt I have upon this view of the case grows out of the weakness of the evidence to show such an agreement on the part of the appellant. If the evidence was sufficient to authorize the jury to find that the appellant incurred such a liability, then it seems to me it might well be said that he must make good the actual loss resulting from the defective seed. See *Passenger v. Thorburn*, 35 Barb., 17; *Page v. Pavey*, 34 Eng. C. L., 628; *Brown v. Edgington*, 40 id., 371; 15 Wis., 318.

A still further objection is taken to that portion of the charge

in which the jury were told that if they found that the respondent was entitled to recover on this branch of the case, his measure of damages would be the profit of the crop if the seed had been good ; because it makes no allowance for the value of the crop actually grown. We think, however, this portion of the charge relates to the deficiency, and must be so construed. With this interpretation, it is undoubtedly correct.

It results from these views that the judgment of the circuit court must be affirmed.

*By the Court.*—Judgment affirmed.