## The Chicago, Burlington & Quincy Railroad Co.
### *v.*
### Alfred Hale.

1.  Measure of damages—*suit against carrier for injury to a jack.*  In an action against a carrier for an injury to a jack while being shipped to the owner, no recovery can be had for loss of profits to be derived from letting him to mares, when it is not averred in the declaration and proved, that the carrier was informed of the intended use of the animal.

2.  It can not be said that a loss of profits is sustained in being prevented from putting a jack to mares, where there is no proof of any outstanding contracts for his services.

3.  New trial—*presumption as to effect of improper evidence and instructions.*  In an action for an injury to a jack, the proof was conflicting as to the damage to the animal, the highest showing $200.  The court improperly admitted evidence of loss of prospective profits to be derived by standing him, and instructed the jury that they might consider such evidence in making their verdict, and the jury assessed the damages at $200: *Held,* that as it was impossible to say from what data the estimate of damages was made, a new trial should be granted.

Appeal from the Circuit Court of Warren county; the Hon. Arthur A. Smith, Judge, presiding.

Mr. Wm. C. Norcross, and Mr. J. J. Glenn, for the appellant.

Mr. James W. Davidson, for the appellee.

Mr. Justice Scholfield delivered the opinion of the Court:

This was an action on the case, brought by appellee against appellant, in the court below, to recover for injuries to a jack, which appellant undertook to carry for appellee from Burlington, Iowa, to Monmouth, in this State.

The declaration contains two counts. In the first it is merely charged, after alleging the undertaking to carry, etc., that through the negligence of appellant and its servants, while the jack was being carried from Burlington to Monmouth by appellant, as a common carrier for hire, he was wholly lost to appellee, whereby he was damaged $1000.

The second count is, in substance, the same as the first, with this addition: It is therein further alleged, that the jack was bought and owned by appellee for the sole purpose of being stood by him for service as a foal-getter; and that the use of the jack as a foal-getter for the season of A. D. 1874, was reasonably worth $400, all of which appellee has lost.

The jury, after being instructed by the court, returned a verdict in favor of appellee, assessing his damages at $200, upon which appellant moved for a new trial, but the court overruled the motion and gave judgment upon the verdict.

The only questions we think it necessary to notice in this appeal relate to the measure of damages.

The jack was shipped to Monmouth on the 23d day of April, 1874, from Burlington, where appellee had purchased him for $200. He was shipped in good condition, but when he was taken from the car at Monmouth, one of his legs was injured. There is, in the evidence, a great discrepancy as to the extent of the injury—some of the witnesses, including appellee, valuing the jack, if sound, at $300, and estimating the injury at $200, while other witnesses estimated the injury as but temporary, and but slightly affecting the usefulness and not seriously impairing the value of the animal. Evidence was given by appellee, over appellant's objection, showing how much he could have made from the jack by letting him to mares, during the season, and exception was taken to this ruling.

Appellant, among others, asked the court to give to the jury the following instruction:

"5. The court instructs the jury that no damages can be recovered by the plaintiff in this action, except such damages as should either be, fairly and substantially considered, as

arising naturally—that is, according to the usual course of things—from the breach of the contract entered into by the defendant to safely carry the jack from Burlington to Monmouth, or such damages as may reasonably be supposed to have been in contemplation of both parties at the time they made the contract, as the probable result of the breach of it; therefore, if the jury believe, from the evidence, that the jack in controversy was shipped from Burlington to Monmouth on a contract made between plaintiff or its agent, and defendant or an agent of defendant, and that at the time such contract was made nothing was said or done to cause the defendant or its agent to know the purpose for which said jack was being shipped, that then and in that case no damages could be recovered from the defendant in this action for loss of the use of the jack during any portion of time for breeding purposes."

The court refused to give the instruction, and appellant excepted.

At the instance of appellee, the court gave to the jury this instruction:

" The jury are instructed, that if they believe, from the evidence, that the jack of plaintiff, before the commencement of this suit, was shipped at Burlington, Iowa, in good order and condition, on board of the cars of defendant, to be carried, for reward, to Monmouth, and that said jack was delivered to plaintiff from the cars of defendant in an injured condition, and that such injury was occasioned by the negligence of the employees of said defendant in carrying said jack from Burlington to Monmouth, and that said jack was rendered less valuable thereby, and plaintiff has suffered loss and damage from such injury in this: that said jack was unable to perform valuable service for plaintiff through the season of 1874, then the jury will find for said plaintiff, and assess his damages at such sum as they decide has directly resulted to plaintiff from said injury."

To this, also, appellant excepted.

*Priestly et al.* v. *Northern Indiana and Chicago Railroad Company*, 26 Ill. 205, was an action against a common carrier for negligently delaying the delivery of machinery intrusted to it to carry.   It was there held the plaintiff was entitled to recover the value of the use of such machinery in such a factory as that for which it was designed, for the time it was detained.   And it was also said, had the plaintiff notified the defendants for what purpose they designed the machinery, and the circumstances of their necessities, they might have brought forward other topics and elements of damage, such as that a large number of hands were, of necessity, under pay and idle; loss of promised custom, out of which profits would have been made; but that in the absence of such notice, proof of this kind was properly rejected.   So, also, it was said, if "the plaintiff had alleged in his declaration that he had made valuable contracts, to be executed with this machinery, which would have yielded him profits, the jury, though they would not be bound to adopt any specific contract that may have been made, yet if reasonable evidence is given that the amount of profit would have been made, as claimed, the damages might be assessed accordingly."

In *Frazer et al.* v. *Smith et al.* 60 Ill. 146, the contract, for breach of which suit was brought, was to repair and put in good order for the plaintiffs certain machinery.   It was said: "This court has decided in cases kindred to this, that the measure of damages is not prospective gains, unless there should be shown outstanding contracts to be performed by the machinery to be furnished.   There is no averment in the declaration of such, the only averment being, that the plaintiffs were deprived of the use of the still for two months, during which time they might and would have manufactured large quantities of alcohol, from which they would have derived great gains.   This is all prospective, and too remote to be an element of damages."

In *Illinois Central Railroad Co.* v. *Cobb, Christy & Co.* 64 Ill. 128, suit was brought for neglect in carrying and delivering grain, and among other questions discussed was that of

the measure of damages, and the court, at page 141, say: "The rule undoubtedly is, as between vendor and vendee, or shipper and carrier, that where the article is desired for a special purpose, that fact should be communicated to the vendor or carrier, if it is made the foundation of special damages against them, and if it is of a character likely to affect the action of the vendor or carrier."

Tested by these authorities, it would seem clear the ruling of the court was erroneous. There is no averment in the declaration, and there is no proof, that the defendant's servants were informed to what use the jack was destined. Whether for sale, for use as a draught animal, or to be let to mares for hire, they could not know. Loss of profits to be derived from letting him to mares, could not presumably, therefore, have been within the contemplation of the parties at the time of making the contract for his shipment, in the event of the non-fulfillment of that contract, any more than loss of service in work, or loss of opportunity of sale. Nor is it certain appellee sustained any loss of profits that he might, but for the injury received by the jack, have made by letting him to mares. He had no outstanding contracts for mares to be served by him, and whether he would have been able to have made profitable use of him in that way, must, necessarily, have depended upon several contingencies, failure in either of which would have defeated such an expectation.

We think the rule laid down in the instruction asked by appellant, correctly states the law, and that it was error to refuse to give it. We are also of opinion the instruction given at the instance of appellee, which we have quoted, was not properly limited in its language, and that it was erroneous. For like reason, the court erred in admitting evidence of what appellant could have probably made during the season by letting the jack to mares. It may be said, however, the verdict does not include the loss of prospective profits, for there was proof that the damage to the jack was $200—the amount of the verdict. But there was also proof that it was much less. The evidence of prospective profits was before the jury,

and the instructions authorized the jury to take the evidence on that question into consideration in making up their verdict, and it is, therefore, impossible to say from what data their estimate was made.

For the errors indicated, the judgment is reversed, and the cause remanded.

*Judgment reversed.*