# Bell *v.* Reynolds & Lee.

*Action for Price of Guano ; Recoupment of Damages.*

1. *Measure of damages, for failure or refusal to deliver goods sold.* Where the vendor of goods fails or refuses to deliver them to the purchaser, and the price has not been paid, the measure of damages to the purchaser, in an action for the breach, is the difference between the agreed price and the market price at the time and place of delivery, with interest; but this general rule does not apply, when it is shown that the purchaser can not go into the market and, by paying such difference in price, procure the desired goods.

2. *Same ; profits as damages.*—Profits sustained as the natural consequence of the breach or wrongful act complained of, are recoverable as a part of the damages, when not objectionable on the ground of remoteness or of uncertainty.

3. *Same.*—On a sale of guano, which the seller knew was intended for use by the purchaser in raising a cotton crop on his plantation, only one-half of the stipulated quantity being delivered, and it being then too late to procure it elsewhere, the measure of damages to the purchaser is the difference in value between the cotton raised on the land on which the guano was used, and that raised on the adjoining land, of the same quality and cultivated in the same manner, on which no guano was used.

4. *Action by principal, on contract of agent.*—When an agent makes a contract for the benefit of his principal, whose name is not disclosed, the principal may sue on it in his own name.

APPEAL from the Circuit Court of Barbour.
Tried before the Hon. HENRY D. CLAYTON.

H. D. CLAYTON, Jr., for the appellant, cited *Culver v. Hill*, 68 Ala. 66; *Daughtery v. Amer. U. Telegraph Co.*, 75 Ala. 168; *Martin v. Hill*, 42 Ala. 275; *Clemens v. Railroad Co.*, 53 Mo. 366; *Topeka v. Tuttle*, 5 Kans. 312; *Gray v. Watter-*

[Bell v. Reynolds & Lee.]

man, 40 Ill. 522; *Marsh v. Webber*, 13 Minn. 109; *Jeffrey v. Bigelow & Tracey*, 13 Wend. 518; *Passinger v. Thorburn*, 34 N. Y. 634; Wood's Mayne on Damages, 256, § 214, 1st Amer. ed.; Sutherland on Damages, vol. 1, pp. 106–08, 111.

J. N. WILLIAMS, *contra*, cited *Burton v. Holley*, 29 Ala. 318; *Rose's Executors v. Bozeman*, 41 Ala. 678; *Bozeman v. Rose*, 40 Ala. 212; *Murrell v. Whitney & Sumner*, 32 Ala. 54; *Donnell v. Jones*, 13 Ala. 490; *Bullock v. Ferguson*, 30 Ala. 227; *Culver v. Hill*, 68 Ala. 66.

SOMERVILLE, J.—The chief point of controversy is one relating to the proper measure of the damages claimed by the defendant by way of set-off or recoupment to the plaintiffs' action. The action is brought by appellees to recover the price of nine and a half tons of "Alabama Fertilizer," sold and delivered by them to the defendant. The defense set up is, that the plaintiffs agreed to sell and deliver to defendant twenty tons of this fertilizer, at a stipulated price, with notice that it was intended for use on defendant's cotton crop, to be grown and raised on his plantation in Barbour county during the year 1883. Under the influence of repeated promises to deliver the whole amount in due time, the defendant delayed making efforts to purchase elsewhere until it was too late to do so. The plaintiffs delivered nine and a half tons, and refused on demand to deliver the remainder. Defendant was unable to buy it elsewhere, although he tried to do so in several markets.

The land upon which the fertilizer was designed to be used was prepared and cultivated in a farmer-like manner. Upon a portion of it the nine and a half tons was used, and this portion produced between three and four hundred pounds of seed cotton per acre more than that adjoining, which was also planted in cotton,—the quality and cultivation of each part being precisely the same.

It is contended that the amount of the defendant's damages, for the plaintiffs' failure to deliver the ten and a half tons, is measured by the profits which he has lost in the depreciated production of cotton on the land upon which he intended to use it, shown to have been at the rate of nine or ten dollars per acre.

The case, it will thus be seen, is peculiar in its facts, no precedent precisely analogous being found.

The general rule is familiar, that, in ordinary cases, when the vendor has failed or refused to deliver to the purchaser goods sold, the measure of damages for the breach of contract, if the price has not been paid, is the difference between the

[Bell v. Reynolds & Lee.]

agreed price and the market price of the goods at the time and place of delivery, with interest.—2 Addison on Contr. § 589. This is upon the principle, that the purchaser can readily go into the market, and supply himself with the desired goods, by paying the difference in price. When this can not be done, the reason of the rule ceases, and the rule itself can, therefore, have no application.—*McHose v. Fulmer*, 73 Penn. St. 365.

The damages allowed to be recovered can, of course, embrace nothing except such as is the natural and proximate consequence of the breach of contract, which is the basis of the action. As said in *Hadley v. Baxendale*, 9 Exch. 341 (s. c., 26 Eng. L. & Eq. 398)—a leading and much canvassed case, decided more than thirty years ago, and since then repeatedly approved,—"where two parties have made a contract, which one of them has broken, the damage which the other party ought to receive in respect to such breach of contract should be, either such as may fairly and substantially be considered as arising naturally—*i. e.*, according to the usual course of things—from such breach of contract itself, or such as may reasonably be supposed to have been in the contemplation of both parties at the time they made the contract, as the probable result of the breach of it. Now, if the special circumstances under which the contract was actually made were communicated by the plaintiff to the defendant, and thus known to both parties, the damage resulting from the breach of such contract which they would reasonably contemplate, would be the amount of injury which would ordinarily follow from a breach of contract under these special circumstances so known and communicated." It is observed in *Daughtery v. American Union Telegraph Co.*, 75 Ala. 168, 175, by STONE, J., in commenting on that case, that if the special circumstances of the case are communicated, "they become an implied element of the contract, and parties are presumed to contract in reference to such special circumstances." The amount of recoverable damages may thus be magnified by a knowledge of these special facts. This was recognized by this court in *Rose v. Bozeman*, 41 Ala. 678, where a rule different from the ordinary one was said to prevail, when it is shown that the goods sold "were to be delivered for some specific object, known to both parties at the time, and that thus a loss, within the contemplation of both parties, has been sustained." The reason of this is clear. It is consonant with both justice and sound sense, that one should be "held liable for all those consequences which might have been foreseen and expected as the result of his conduct, but not for those which he could not have foreseen, and was therefore under no moral obligation to take into consideration."—3 Parsons Contr. 179, 180.

33

[Bell v. Reynolds & Lee.]

In accordance with these principles it has been held, that where the vendor knows that the purchaser has an existing contract for resale at a profit, and that the purchase is made expressly to fulfill such contract, the profits which would have accrued from such resale would be recoverable, provided the plaintiff was unable to supply himself by going into the market and purchasing the same kind of goods.—*Messmore v. The N. Y. Shot and Lead Co.*, 40 N. Y. 422; *McHose v. Fulmer*, 73 Penn. St. 365, *supra;* 2 Add. Contr. (Morgan's Ed.) § 589; *Chicago Railroad Co. v. Hale*, 83 Ill. 360; s. c., 25 Amer. Rep. 403.

Are the damages here claimed the natural and proximate consequence of the plaintiffs' failure to deliver the goods for the special use intended? It is our opinion that they are. By natural 'consequences,' we understand those of which the breach or wrongful act was the efficient cause—such as might naturally be expected to follow. By 'proximate consequences' is meant the antithesis of those remote, or such damages as are the direct and immediate result of the breach or wrongful act, being produced without the operation of a secondary or intervening cause.

The rule is often stated in broad terms, that profits are not ordinarily included in the injury for which compensation is made. And again it is frequently asserted, that "the party injured is entitled to recover all his damages, including gains prevented, as well as losses sustained."—*Griffin v. Colver*, 16 N. Y. 489. The true rule seems to be, that profits, which have been sustained as the natural consequence of the breach or wrongful act complained of, are recoverable, unless they are objectionable either on the ground of remoteness, or of uncertainty. Those profits are usually considered too remote, among many others, which are not the immediate fruits of the principal contract, but are dependent on collateral engagements and enterprises, not brought to the notice of the contracting parties, and not therefore brought within their contemplation, or that of the law.—*Masterton v. Mayor of Brooklyn*, 7 Hill, 61. Those are considered uncertain, which are purely speculative in their nature, and depend upon so many incalculable contingencies as to make it impracticable to determine them definitely by any trustworthy mode of computation. To this class belong the cases of *Brigham & Co. v. Carlisle*, *ante*, 243; *Union Refining Co. v. Barton*, 77 Ala. 148, and *Pollock v. Gantt*, 69 Ala. 373, recently decided by this court; and many others analogous in principle.—*Burton v. Holley*, 29 Ala. 318; *Higgins v. Mansfield*, 62 Ala. 267; *Street v. Sinclair*, 71 Ala. 110; *Donnell v. Jones*, 13 Ala. 490; *Blanchard v. Ely*, 21 Wend. 342.

We would not be willing to say that the damages here claimed by the defendant, Bell, by way of lost profits, would have been recoverable, if their ascertainment had been left to mere conjecture. The amount of cotton, or other crops which land produces, is dependent upon so many varying contingencies as to render it very indeterminate. It will vary with the seasons, the adaptation of soil and climate, and its comparative exemption from the ravages of worm or other destructive insects. Speculative opinions of witnesses, as to the probable influences of these operative causes, would be a poor criterion for the measure of values.— *Wilkinson v. Ketler*, 59 Ala. 306. In this case, however, these difficulties are entirely removed. The character of the season is absolutely known. So is the precise effect of the fertilizer used during this particular season. No speculation is needed as to how much rain and how much sunshine were requisite to produce a given amount of crops to the acre, nor as to the probable effect of the fertilizer upon different kinds of soil, or even the proportion of it best suited to the land, and, therefore, what would necessarily have been produced on the remainder, which is shown to have been in precisely the same state of cultivation, and similar in quality of soil.

The rulings of the court were opposed to this view, and were erroneous.

The case of *Wolcott v. Mount* (7 Vroom), 13 Amer. Rep. 438, decided in 1875 by the Supreme Court of New Jersey, bears a strong analogy to the case in hand. In that case, the defendants sold to the plaintiff, who was a market-gardener, some turnip-seed which they warranted to be what was known as " early strap-leafed red-top turnip-seed," a prolific and valuable species. The vendors knew the particular use for which the seed were intended—to raise a crop for the early market. By mistake, but in good faith, they delivered seed of an inferior quality, which turned out to be what was known as " Russia turnip-seed." These were planted, and produced no profit; whereas seed of the other kind, planted the same season on adjoining ground, prepared in the same way, produced large profits to the owner, which were of easy ascertainment. The case was twice considered, upon two separate appeals, and it was held that the measure of the plaintiff's damages was the difference between the value of the product of the seed sold, and the value of the product that would have resulted had the seed corresponded with the representations of the warranty. The ground of the opinion was, that the defendants, when they made the warranty, knew the particular use for which the seed were intended, and they must have seen the probable loss that would naturally result to the plaintiff in the event of its breach

by the sale of an inferior quality of seed, and that the actual experiment made relieved the damages of any objection based on the idea of their being speculative or contingent. — *Wolcott v. Mount*, 13 Amer. Rep. 438, *supra; s. c.*, 20 Amer. Rep. 425.

In *Passenger v. Thorburn*, 34 N. Y. 634, a like ruling was made by the New York Court of Appeals, in the year 1866. The defendant had sold cabbage seed to the plaintiff, and warranted them to produce "Bristol cabbages," which was untrue. It was held that the damages recoverable for the breach of warranty, would be the value of a crop of "Bristol cabbages," such as would have been ordinarily produced that year, less the expense of raising the crop and of the value of that actually raised from the seed. We need not here fully approve the doctrine of this case.

The case of *White v. Miller*, 7 Hun (N. Y.) 427, was one precisely of the same kind, and was decided on the authority of the foregoing decisions. Its correctness was re-affirmed on appeal in 71 N. Y. 118; s. c., 27 Amer. Rep. 13; and again in 78 N. Y. 393; s. c., 34 Amer. Rep. 544. So was *Flick v. Weatherbee*, 20 Wis. 392, where a like ruling was made.

So, in *Randall v. Roper*, 96 Eng. Com. L. 82, the question was as to the proper measure of damages for breach of warranty in the sale of seed-barley. It was held to be the difference in value between the inferior crop produced, and that which would have been produced had the seed been of the particular species they were warranted to be, known as "chevalier barley."

Another well considered, though not strictly analogous case, in support of the conclusion reached by us, is that of *Jones v. George*, 61 Tex. 345 (s c., 48 Amer. Rep. 280), in which is cited a strong array of relevant authorities. In that case, a druggist was applied to for "Paris green," knowing that it was intended to be used in destroying cotton-worms. He, in good faith, delivered "chrome green," a different and inferior article, which was neither "Paris green" nor possessed its properties, though resembling it in appearance. The vendor was held liable for the loss of the purchaser's crop of cotton caused thereby, and the measure of the plaintiff's damages was held to be the value of the crop just before its destruction, with the cost of the compound and its preparation and application, and interest on the moneys thus expended.

In cases of warranty, however, the amount of damages to be recovered is often aggravated by the presence of fraud, or bad faith in the representation made by the party warranting; and this distinction is fully preserved in many of the decisions on this branch of the law.—*Herring v. Skaggs*, 62 Ala. 180. But there can be no sound distinction taken, either as to the natural

[Stein v. Leeper.]

or proximate nature of the damages suffered, between these cases and the one at bar.

It is made to appear in this case that the profits claimed by the defendant would certainly have been realized but for the default of the plaintiffs; that the special facts brought to the knowledge of the plaintiffs, as vendors of the goods, brought such damages within the contemplation of the contracting parties, as naturally flowing from a failure to promptly deliver them for the use intended; and that these profits are in no sense speculative or contingent, but, on the contrary, are capable of the most accurate ascertainment.—*Culver v. Hill*, 68 Ala, 66; *Daughtery v. Amer. Union Tel. Co.*, 75 Ala. 168; *Messmore v. N. Y. Shot & Lead Co.*, 40 N. Y. 422; 3 Parsons Contr. *177–*187; 2 Add. Contr. (Morgan's Ed.) § 589, *note* 2.

But one other point remains to be considered. This relates to the inquiry as to who is the proper person or persons to bring this suit, instituted to recover the nine and a half tons of fertilizer sold to defendant. If Lee was acting for the partnership of Reynolds & Lee at the time of the sale, and the plaintiffs were the real parties in interest, it would make no difference that this agency was unknown to defendant. An undiscovered principal can always sue on a contract made by an agent for his benefit. The court, as we understand the record, in effect so ruled.

The judgment is reversed, and the cause remanded.