# Reynolds & Lee *v.* Bell.

*Action for Price of Guano; Recoupment of Damages.*

1. *Recoupment of damages by purchaser, on failure of vendor to deliver part of goods contracted for; profits as damages.*—In an action by the seller to recover the price of guano sold and delivered, the defendant may, under the pleas of set-off and recoupment, show that plaintiff delivered about one half of the quantity contracted for, knowing the use for which it was intended, and may recover as damages the loss thereby sustained by him, being the difference between the quantity and value of the crop raised on that portion of his land on which the guano was used, and the crop raised on the other part, of the same quality and cultivated in the same manner, on which no guano was used; and the same principle applies, although it is shown that the entire quantity of guano was at first delivered and set apart to the purchaser, but being allowed to remain in the warehouse of the seller, one half of it was afterwards sold by him to other persons, and was never replaced, notwithstanding repeated promises to replace it in time for use on the crop.

APPEAL from Barbour Circuit Court.

Tried before Hon. J. M. CARMICHAEL.

This case was before the Court on former appeal, 78 Ala. 511. The suit was brought by appellants to recover the price of nine and a half tons of "Alabama Fertilizer" sold and delivered by them to defendant. The defense set up is that plaintiff agreed to sell and deliver to defendant twenty tons of this fertilizer at a stipulated price with notice that it was intended for use on defendant's cotton crop. Upon repeated promises by plaintiffs to deliver the entire amount in due time defendant delayed making efforts to purchase elsewhere until it was too late to do so. The plaintiffs delivered nine and a half tons and failed to deliver the remainder.

The defendant recouped the damages sustained by the failure to deliver the remaining ten and a half tons.

There was testimony tending to show that when a large amount of the fertilizer was received by plaintiffs, plaintiffs informed defendant of such receipt and told him "to pile up his twenty tons in one corner of plaintiffs' warehouse, separate from the main bulk;" that this was done by defendant, Bell, who took therefrom from time to time nine and a half tons; that plaintiffs had allowed other customers to take the remaining ten and a half tons of Bell's fertilizer, and that

· [Reynolds & Lee v. Bell.]

plaintiffs made divers and sundry promises to defendant that he, defendant, should have the remainder of his fertilizer in "plenty time" for use on his crop.

The court gave the following charge at request of defendant, to which plaintiff excepted:

"If the jury believe from the evidence, (1) that the plaintiffs agreed to sell and deliver twenty tons of Alabama Fertilizer at $38.00 per ton, with notice that it was intended for use on the defendant's cotton crop to be grown and raised on his plantation in Barbour county, Alabama, in the year 1883; and (2) that the plaintiffs failed, or refused, on demand of the defendant, to deliver ten and a half tons ·of such fertilizer; and (3) that under the influence of repeated promises of the plaintiffs, if such promises were made, the defendant delayed making efforts to purchase the other ten and a half tons of the twenty tons of fertilizer for said use from others or elsewhere, until it was too late to do so, or he was unable to do so; and (4) that all the lands upon which the fertilizer was designed to be used were prepared and cultivated in a farmer like manner; and (5) that upon a portion of it the nine and a half tons which were delivered were used, produced 300 pounds or other amount of seed cotton more per acre than that adjoining, which was also planted in cotton, and that the quality and cultivation of each part of said land being precisely the same, the jury must assess the defendant's (Bell's) damages for the failure of the plaintiffs to deliver the undelivered ten and a half tons of fertilizer, according to the profits which the defendant lost in the depreciated production of cotton on the part of said lands intended to be fertilized with such undelivered fertilizer, but which was not; and (6) the defendant's damages will offset, as far as they may go, the plaintiffs' debt and interest; and (7) if the defendant's damages exceed in amount the plaintiffs' debt, with interest, then the jury must deduct the plaintiffs' debt and interest from the defendant's damages, and the balance after such deduction must be the amount of their verdict for the defendant."

JERE N. WILLIAMS, for appellant, contended that there was evidence of a delivery of the twenty tons of fertilizer; that the agreement to substitute ten and a half tons for that amount converted by plaintiffs was a new contract, and that the charge was erroneous in ignoring such evidence.

32

[Reynolds & Lee v. Bell.]

H. D. CLAYTON, JR., *contra.*

SOMERVILLE, J.—The only exception presented for our review is to the charge given by the Circuit Court at the request of the defendant in relation to his counter-claim urged by way of set-off and recoupment to the action of the plaintiffs.

That this charge is correct, and announces principles of law appropriate to the case presented by the evidence is clear, unless the one objection urged to it in argument can be sustained.—*Bell v. Reynolds & Lee,* 78 Ala. 511; s. c., 56 Am. Rep. 52; *Griffin v. Colver,* 16 N. Y. 489; s. c., 69 Am. Dec. 718; *note,* p. 724.

The criticism on the charge is, that it ignores that portion of the evidence which tends to prove that the plaintiff's contract to deliver the defendant the twenty tons of fertilizer had been discharged by the delivery of the full quantity to the purchaser, and that the second obligation incurred to deliver ten and a half tons, based on the plaintiff's alleged conversion of this quantity of the twenty tons said to have been delivered, imposed new relations on the contracting parties entirely different from those growing out of the original agreement. The contention is that this new agreement excluded by implication any liability for the profits which defendant would probably have realized from using the fertilizer upon the land, which he had prepared for its use, in the cultivation of cotton. We held, when the case was last before us on appeal, that under the contract of the plaintiffs to deliver the twenty tons, with notice that it was intended for use on the defendant's cotton crop, to be grown on his plantation in Barbour county, the defendant could recover, by way of set-off, or recoupment under the provisions of the statute (Code, 1886, § 2683), the profits which he would have realized but for the plaintiffs' default in delivering the eleven and a half tons in controversy. The special facts brought to the knowledge of the plaintiffs were held sufficient to bring the damages claimed for such lost profits within the legal contemplation of the contracting parties, and such damages were held to be neither remote, nor uncertain, but to be proximate and capable of accurate ascertainment.—*Bell v. Reynolds,* 78 Ala. 511, 517.

We do not concur in the interpretation put on the evidence by the appellants' counsel, nor in the inferences which he seeks to deduce from it. Admitting, as contended, that the

[Campbell et al. v. Larmore et al.]

plaintiffs, after delivering the full amount of the fertilizer agreed to be delivered by them to the defendant, converted to their use eleven and a half tons of it, nevertheless the evidence tends to show that they promised to replace it in time for the defendant to use it on his cotton crop that year. This was precisely the original obligation incurred by them as to this particular portion of the goods sold. It had reference to the same crop, the same uses, and the same land originally within the contemplation of the parties. The same damages flowed from the default, and were, therefore, in like manner recoverable by way of set-off or recoupment, as if no new contract had been made. Nor, in this aspect of the case, is the charge objected to so misleading as to be erroneous, as it could not, in our opinion, have worked any prejudice to the plaintiffs. The case, in our judgment, remains unchanged by this new phase of the evidence, and the judgment must be affirmed.