## GEO. W. ROBINSON & CO., APPELLANTS, VS. HYER BROTHERS, APPELLEES.

1. In arriving at the real intention of the parties as shown by the language employed by them in a contract, and in order to make a correct application of the terms used to the subject matter and objects referred to therein, when the same are not clearly expressed, the situation of the parties and the surrounding circumstances may be considered in construing the contract, but it must be borne in mind that it is the language of the contract itself that is to be construed, and when the parties reduce their agreement to writing, no other language employed by them in making the contract can be resorted to except that furnished by the instrument itself.

2. A written contract not under seal may be varied or added to by subsequent oral agreement upon a sufficient consideration as to its terms to be performed in the future.

3. Where a consideration for such agreement is found to exist, and is of such character as the law recognizes, the courts will not ordinarily inquire into its adequacy.

4. A consideration emanating from some injury or inconvenience to the one party, or from some benefit to the other, is a recognized legal consideration.

5. Under a contract to save the purchasers of a cargo of lumber to fulfill a contract with foreign buyers harmless against all loss on account of the cargo, it is competent to prove, in suing on the breach of such contract, the payment by plaintiff of marine insurance on the cargo and expenses for inspection, and to adjust the loss on the cargo in the foreign port.

6. The primary object in awarding damages at common law is compensation to the injured party, but the damage allowed for this purpose must be the natural and proximate result of the wrong done.

7. The general rule for awarding damages for a breach of a contract for the sale and delivery of personal property is the difference between the contract price and the market value at the time and place of delivery as fixed by the contract, but this is not the invariable rule in all cases.

8. Where the vendor of a cargo of lumber knows that the purchaser has an existing contract for a resale of the lumber at an advanced price in a foreign market, and that the same was purchased to fulfill such contract, and the vendor agrees to supply the lumber to enable the purchaser to carry out the said contract, on a breach of such agreement the profits which would have accrued from such resale are recoverable when it appears that other lumber of like kind could not be procured in the foreign market where delivery was to be made.

9. In suing for a breach of contract to save the purchaser of a cargo of lumber harmless against any just reclamation upon the cargo, it is essential that plaintiff show by competent proof what a sum claimed as reclamation was for, and also that it is composed of items, if such be the case, of just reclamation against the cargo, but where other testimony establishes such reclamation to be proper and just, it is not error for the court to permit a plaintiff to testify that he paid a given sum as reclamation when it is the amount shown to be correct and just by the other evidence in the case.

10. On the facts of this case, the refusal of the court to give instructions asserting the only correct measure of damages to be the difference between the price at which plaintiffs bought, and the market value at Antwerp, the foreign market where the lumber was to be delivered: *Held*, Not to be error. *Held further*, The rule that in cases of executory contracts for the sale and delivery of personal property, the right to damages on the

ground that the goods are not in compliance with the contract does not survive the acceptance of the property by the vendee after an opportunity to ascertain the defects, unless notice is given to the vendor or offer to return the property, does not apply to this case, and the charge requested on this theory by defendants was properly refused.

11. A judgment should not be reversed for technical error where it affirmatively appears that no harm was thereby done to the party against whom it was committed.

12. Where the court refuses to give to the jury an instruction which embodies a correct and appropriate proposition of law, but it clearly appears from the undisputed facts of the case that the verdict is amply sustained by the evidence, and if the instructions had been given it could not possibly have affected the verdict, the error will be held immaterial.

Appeal from the Circuit Court for Escambia county.

### STATEMENT.

William K. and Albert Hyer, as partners under the firm name of Hyer Brothers, sued George W. and Rex Robinson, as partners under the firm name of George W. Robinson & Co., and obtained a judgment.

The declaration as originally filed contained three common counts for money had and received by defendants for the use of the plaintiffs, for money paid by plaintiffs for defendants at their request, and for an account stated between plaintiffs and defendants, and also a special count. By leave of the court, obtained at different times, three additional special counts were added to the declaration. The special count in the original declaration alleged, in effect, that plaintiffs being under contract to deliver a certain quantity of pine lumber for resale in Europe, and for the purpose of carrying out their said contract, entered into a certain contract with defendants, as evidenced by exhibits attached to and made a part of the declaration, and marked "A" and "B," the specifications of which con-

tract made with defendants corresponded with the contract plaintiffs had made for the delivery of the lumber for resale in Europe, and defendants knew that the lumber contracted for between them and plaintiffs was to enable the latter to carry out their contract for the resale of the lumber in Europe; that defendants commenced to deliver lumber to plaintiffs in alleged compliance with their contract with plaintiffs when it became evident to both parties that the lumber, of which delivery was offered and commenced, was not of the quality and description required by the specifications in the contract between them, and plaintiffs were about to reject the lumber, whereupon defendants, to induce plaintiffs to receive the same, entered into another contract with them, as evidenced by exhibit "C" attached to and made a part of the declaration, and thereupon plaintiffs accepted the lumber and had to pay just reclamation on account thereof in consequence of its not being in accordance with the said contract, to the amount of $2,545.79.

Exhibits A and B, made a part of the declaration, are contracts between plaintiffs and defendants, dated June 22nd and July 30th, 1885, for the delivery by the latter to the former of certain quantities of "P. P. lumber," according to certain specifications therein expressed at prices fixed, and to be inspected by a competent inspector to be furnished by plaintiffs. The lumber was to be shipped from Pensacola upon a vessel to be procured.

The contract represented by exhibit C consists of a written communication from defendants to plaintiffs, bearing date December 1st, 1885, as follows, *viz:* "We will undertake to ship cargo of lumber *per* Vikengen, in accordance with contracts dated June 22nd and July 30th, 1885, furnishing licensed inspector, whose cer-

tificate will accompany invoice, and we agree to hold: you harmless against any just reclamation upon cargo in consequence of its being not in accordance with said contract; upon signing of B–L and negotiation of your exchange against documents, you are to pay to us such quota of amount as you are allowed to draw, you endeavoring to bear as little margin as possible, if possible not more than 10-15 per cent. of amount.

Very truly,

GEO. W. ROBINSON & CO."

To the declaration as first filed the defendants plead: 1. Never indebted as alleged. 2. The lumber delivered by defendants to plaintiffs was in accordance with the contract between them. 3. It was not true that it became evident to plaintiffs and defendants that the lumber was not of the quality and description agreed on by the specifications of the contract between the parties, and that the contract contained in exhibit C was therefore entered into; but defendants averred that said contract was entered into wholly because of differences between them and plaintiffs as to the employment and conduct of inspectors for said lumber.

The first additional count alleges, as in the first special count, plaintiffs' contract to deliver lumber for re-sale in Europe, and the further contract with defendants as evidenced by exhibits A and B attached to the declaration, with knowledge on the part of defendants of the former contract, omitting the allegation as to making the subsequent agreement shown by exhibit C, and further alleging that defendants failed to deliver to plaintiffs lumber in accordance with the specifications of the contracts shown by exhibits A and B, but delivered lumber of an inferior quality, different dimensions and of a less quantity than was required by the terms of said contract, and thereupon confessing:

that the said lumber was not as required by the terms of the said contract and in consideration thereof defendants agreed with plaintiffs to hold them harmless and fully indemnify them against all loss and damage of every description whatever which they might sustain by reason of such differences in the lumber; that by reason of such differences plaintiffs sustained loss and damage by having to pay marine insurance on the lumber which would have been otherwise paid by the buyers, and by having an inspection of the said lumber made in Europe which would not have been necessary but for such differences, and by just reclamation against the lumber by buyers and the reduced price received by plaintiffs from the buyers on account of the said differences, amounting in the aggregate to the sum of $2,545.79.

The second special added count alleges, as in the first special count, plaintiffs' contract to deliver lumber for re-sale in Europe, and the contract with defendants as shown in exhibits A and B, attached to the declaration, with knowledge on the part of defendants of the former contract, omitting the allegations as to the subsequent contract shown by exhibit C, and further alleges that defendants failed to deliver to plaintiffs lumber in accordance with the specifications of the contract shown by exhibits A and B, but delivered lumber of an inferior quality and of a less quantity than what was required by the terms of said contract, so that when the lumber arrived in Europe at the place where it was to be delivered by plaintiffs for re-sale, it was of less value than it would have been in the market there, and of much less value than it would have been under the terms of the contract for re-sale, towit: in an amount greatly exceeding $2,545.79, but plaintiffs, by the exercise of the greatest diligence and care succeeded in

reducing the difference and their loss to said sum of $2,545.79.

To the foregoing added counts defendants plead: 1. That it was not true that defendants confessed any default in the lumber as alleged. 2. It was not true that defendants made the alleged contract to hold plaintiffs harmless and fully indemnify them in the manner and form as alleged. 3. That the cargo as delivered by defendants to plaintiffs was in compliance with the contract between them. 4. Defendants were never indebted in manner and form as alleged.

The third additional count alleges, as in the first special count in the declaration, plaintiffs' contract to deliver lumber for re-sale in Europe, and the contract with defendants, as shown by exhibits A and B, with knowledge on the part of defendants of the former contract, and further, that thereafter a difference arising between plaintiffs and defendants as to the employment of an inspector tendered by the former, and objected to by the latter, in consideration that plaintiffs agreed for the inspection of the lumber to be made by defendants' inspector, they entered into a certain other contract with the plaintiffs, as evidenced by exhibit C, and made a part of the declaration, and thereupon plaintiffs accepted the said lumber and had to pay just reclamation upon the same in consequence of its not being in accordance with the said contract shown by exhibit C, amounting to $2,545.79.

To this count defendants plead: 1. They never were indebted in manner and form alleged. 2. The lumber delivered upon the contract was in compliance therewith. 3. Plaintiffs paid no just reclamation because of difference in the cargo as alleged.

Plaintiffs joined issue upon all defendants' pleas, and the trial of the case was upon the issues made.

The other facts in the case are stated in the opinion of the court.

*Blount & Blount,* for Appellant.

### STATEMENT OF MATERIAL PLEADINGS:

1. In the first special count, plaintiffs declare that they made a contract to sell certain lumber in Europe; that they made two contracts (called "A" and "B") with defendants for the furnishing by the defendants to plaintiffs of lumber identical in specification with that to be sold in Europe; that defendants knew that the lumber was to be re-sold in Europe; that defendants afterwards made (for a consideration) a contract (called "C") to hold plaintiffs "harmless against any just reclamation upon the cargo in consequence of its not being in accordance with contracts;" that it was not in accordance with contract and that plaintiffs had to pay just reclamation in consequence thereof to the amount of $2,545.79.

The material pleas applicable to this count were:

A. Never was indebted.

B. Compliance with the contract.

2. The second special (called additional) count, was the same in substance except that it, without mentioning "C," sets forth an agreement by defendants subsequent to those for the supplying of the lumber, to "fully indemnify the plaintiffs against all loss and damage of every description whatsoever which they might sustain" by reason of specified deficiencies in the cargo; that there were such deficiencies and that by reason thereof, plaintiffs sustained loss and damage by having to pay marine insurance, by having an inspection on the cargo, by just reclamation against the lumber by the buyers, and by the reduced price re-

ceived by plaintiffs from buyers on account of such deficiencies.

The material pleas applicable to this count were:

A. Non assumpsit as to subsequent contract.

B. Never was indebted.

C. Compliance with the first two contracts.

3. The third special (called additional) count is substantially the same as the second, except that it omits mention of the subsequent contract and declares for the difference between the market value in Europe of the lumber as delivered and its value under the contract of resale, and what the value of it actually was as delivered, claiming, however, less than this difference, because the plaintiffs with diligence succeeded in reducing it to less.

The pleas applicable to this count were:

A. Compliance with contract.

B. Never was indebted.

4. The fourth special count (called additional) is substantially like the first, except in its statement of the consideration for the subsequent contract "C."

The material pleas applicable to this count were:

A. Never was indebted.

B. Compliance with contracts "A" and "B."

C. That plaintiffs paid no just reclamation.

There were three common counts, to-wit:

5. Money had and received.

6. Money paid.

7. Accounts stated.

To each of these the plea was:

A. Never was indebted.

Replications were filed taking issue upon all of these pleas.

### STATEMENT OF ISSUES.

The foregoing statement of the pleadings shows that the following facts were admitted:

1. The making of contracts "A," "B" and "C."

2. The purchase by plaintiffs for the purpose of resale.

3. The knowledge by defendants of such purpose.

4. The delivery by the defendants of the cargo.

And the following facts were denied:

1. The making of the subsequent contract alleged in the second special count.

2. The noncompliance with the contracts made.

3. The existence of any indebtedness by defendants to plaintiffs on account of the transaction.

It thus became incumbent the plaintiffs to prove:

1. That the cargo delivered was not in accordance with contracts "A" and "B."

2. That they sustained damages from such noncompliance with the contracts.

In the proof of such damage they were restricted under the third special count to the difference between the value of the cargo as delivered and its market value at the time and place of delivery in Europe, or (if such proof be admissible, a point which will be discussed hereafter), the difference between the contract price and the reselling price.

Under the first and fourth special counts, they could (if just reclamation upon the cargo amounts to anything more than the damages which the law provides for without any such contract), extend their recovery to any just reclamation upon the cargo paid by the plaintiffs.

Under the second special count, if they proved the subsequent contract alleged therein, they could recover for any loss or damage whatever sustained by

them by reason of the defendants noncompliance with contracts "A" and "B."

With this statement of the material pleadings, the issues under them, and the burden upon the plaintiffs, we are prepared to discuss the assignment of error.

The first, second, third and tenth assignments of error are abandoned, they being covered in substance by the other assignments.

The fourth assignment of error. This assignment is as follows:

"The court erred in admitting the testimony of W. K. Hyer as to the conversation or agreement leading up to the making of the contract marked "C," attached to the declaration, which ruling is set forth at page 30 of the record." The error of the court is apparent upon a little reflection. This witness testifies to the signing of the written contract "C."

All the conversation objected to by the defendants preceded the making of this written contract. If it did not affect that contract, it was inadmissible, because irrelevant.

If it did affect the said contract, then it varied or altered it and was inadmissible, because the written contract merged into itself all that preceded it. Harrell vs. Durrance, 9th Fla. 490; Bart vs. Bank, 101 U. S. 96.

The alteration here is very material for the contract "C," defines very clearly the obligation assumed by the defendants.

By the contracts "A" and "B" they had assumed the obligation of every vendor of chattels to respond in damages according to well known legal rules for any breach thereof. Whether the words "just reclamation" embraced in "C" did or not extend the already implied obligations of defendants, yet it seems clear

that they did not make the defendants responsible for all loss.

Yet this responsibility is what the plaintiffs seek to fasten upon the defendants by the conversation between this witness and Geo. W. Robinson, in which the latter is made to say "he would stand between us (the plaintiffs) and 'all loss.'"

As we have shown, there was a special count (the second special count) relying upon a contract made by defendants to fully indemnify the plaintiffs against all loss and damage of every description whatsoever which they might sustain, etc.

The plea to this made a direct issue upon the making of such contract, and the existence of it was thus material. Upon such an issue the defendants were entitled to have admitted only admissible testimony, and the testimony of a verbal contract made before a written contract, covering the same subject matter, was not admissible. Without such testimony (or that objected to in the fifth assignment of errors) there was no proof of such contract as that counted upon, and without it the jury would have had no right to proceed upon the assumption that the contract was proved. With it, they had such a right, and to base their verdict upon the contract.

Besides, this was a promise made by Geo. W. Robinson for himself, and not for the firm, and so far as its terms indicate was not intended to and did not bind the other defendant, Rix M. Robinson.

#### FIFTH ASSIGNMENT.

This assignment is in this language: "The court erred in refusing to exclude from the jury the testimony of W. K. Hyer as to the promise of appellants made subsequent to said contract "C," to hold appel-

2556      SUPREME COURT.

Geo. W. Robinson & Co. v. Hyer Brothers.—Argument of Counsel.

lants harmless from all loss or damage," which ruling is set forth at pages 37 and 38 of the record.

The witness testified to a conversation of Geo. W. Robinson, one of the defendants, subsequent to the making of contract "C."

In this conversation Robinson said that "he would stand between us and all loss," and that "they would hold us harmless against all loss." The first of these promises was inadmissible in this suit against these two defendants, because by its very terms it was an individual promise by Geo. W. Robinson as to what he would do, and did not purport to be on account of the firm. It was an entirely gratuitous promise on his own account.

The second promise did purport to be one by the firm, the defendants here, but it too was gratuitous because entirely without consideration. Contracts "A," "B" and "C" had been made and the contractual rights of the parties had been fixed.

If any more contractual rights were to be gained by the defendants it must have been upon a new consideration. Spann vs. Baltzell, 1st Fla, pp. 313 and 314; Canova vs. Stidwell, 34 N. J. L. 54; Hasbrouk vs. Winkler, 48 N. J. L. 431; Adams vs. Nichols, 19 Pickering, 275.

There was none in this case. There is no evidence to show that the plaintiffs gave anything additional for this promise, and the evidence clearly shows that they released no advantage nor did they change their position in consideration of such promise. In other words, there was no benefit to the defendants nor detriment to the plaintiffs as a consideration for the promise. Either benefit to a promisor or detriment to the promisee is essential. Hare on Contracts, page 118; 1 Pars. on Contracts, marg. page 431.

W. K. Hyer expressly says that plaintiffs were rely-
ing upon contract "C." They did not refuse to receive·
the lumber, and consequently there was no considera-
tion arising out of an inducement to go on receiving·
the lumber, raised by the promise.

There was no consideration in any way.

The materiality of the testimony and of the error in·
refusing to exclude it is shown by the consideration·
that such a promise as this was the foundation for the·
second special count, and that there was no other tes-
timony (except that objected to in the fourth assign-
ment) tending to prove the special promise alleged in
that count.

### SIXTH ASSIGNMENT.

This assignment is in these words: "Because the·
court erred in admitting the testimony of W. K. Hyer·
as to the marine insurance paid by appellees on the·
cargo of the Vikingen, as set forth at page 34 of the·
record."

The gist of W. K. Hyer's testimony, and of the con-
tention of the plaintiffs on this point, is that under
plaintiffs' contract with Europen buyers, the cargo was·
to become the property of the buyer in Pensacola;
that thereafter any expense connected with it would
have been borne by the buyers; that by the defend-
ant's conduct, the terms of the contract with the Eu-
ropean buyers was so changed that they received the·
property in Europe, and paid insurance upon their own,
account only upon that which they received, and that,.
therefore, the plaintiffs had to pay the insurance on
that which was not received.

If the contract set forth in the. second special count,
to "stand between plaintiffs and all loss or damage of
· any description whatever," has been established, then
we presume this testimony was admissible; but if, as.

558 SUPREME COURT.

'Geo. W. Robinson & Co. v. Hyer Brothers.—Argument of Counsel.

we have contended, in the fourth and fifth assignments of error, it is not established, then it was not admissible, for the damage established by it was not recoverable against the defendants either under the general obligation imposed by the contracts "A" and "B" or under the obligation imposed by the contract "C."

Under the general obligation assumed by the contracts of sale and delivery, the damages for the breach would be only the difference between the contract price and the market price at the time and place of delivery. Merritt vs. Wittich, 20th Fla. 27; McKnight vs. Dunlap, 5th N. Y. 537; Dana vs. Findler, 12th N. Y. 40; Dart vs. Durton, 47th N. Y. 174; Memphis vs. Brown, 20th Walls 305.

And, in a case like this, where the buyer bought for delivery in Europe, the seller knowing of the contract for such delivery, the market price would be fixed by that at the time and place of such European delivery. But beyond this we do not find damages to be allowed; for beyond this damages would be too remote and consequential. See Hargous vs. Ablon, 3 Denio 406; Case vs. Stevens, 137 Mass., 551.

Assuming that contract "C" alters this, the extent of the alteration is only to make the defendants "hold the plaintiffs harmless against any just reclamation upon cargo in consequence of its not being in accordance with said contracts." It will be noticed that the obligation is to "hold harmless." This necessarily means to indemnify against a claim by a third person.

The holding harmless is to be against "reclamation," which also means that the obligation of the defendants shall depend upon a "claim back" by the buyers upon the plaintiffs.

A limitation upon the subject matter of the claim is to be found in the words "upon cargo," that is, the

JANUARY TERM, 1895.    559

Geo. W. Robinson & Co. v. Hyer Brothers.—Argument of Counsel.

reclamation is not to be because of the expenses incurred in connection with the cargo, but is limited to the claims for deficiencies in the cargo. This contention is made conclusive by the fact that the reclamation is to be "in consequence of the cargo not being in accordance with the contract;" that is, in consequence of deficiencies in quantity or quality. This contract imposes no liability for any violation except the variation of the cargo from that contracted for, and this variation furnishes the measure of any reclamation.

Test this claim for insurance by this construction of the contract, and it readily appears that it is not admissible:

1. It is not to indemnify the plaintiffs for a claim by the buyers, but to pay plaintiffs for a sum voluntarily expended by them. The fact that the buyers paid out the money and afterwards demanded it from the plaintiffs does not make a reclamation, for the demand is not because of damage done to the buyers, or of loss suffered by them, but a demand for the return of money paid out by them for the benefit of the plaintiffs.

Both the contract and the counts which count upon this contract and declare that the plaintiffs paid the reclamation, demand that the plaintiffs must have paid it as a reclamation of the buyers.

2. It was not a reclamation upon the cargo, but was, as W. K. Hyers alleges in his testimony, an expense to which the plaintiffs were put by reason of defendant's refusal to allow buyers' inspectors to inspect at Pensacola, and the consequent inability of plaintiffs to perform their contract there.

3. It was not a damage legally flowing in consequence of the variation of the cargo from the contract. It was simply an expenditure by the plaintiffs as an additional precaution for their own protection, and is

no more a charge against the defendants than is an insurance effected by a mortgage on his own account upon the mortgaged property a charge against the mortgagor in the absence of an agreement to that effect on his part.

### SEVENTH ASSIGNMENT.

The seventh assignment is in this language: "Because the court erred in admitting the testimony of W. K. Hyer as to the inspection charges and traveling expenses paid by appellees as appears on pages 34 and 35 of the record."

Much of what has been said under the sixth assignment is applicable here. These expenditures were made by appellees in procuring persons to go from England to Middleburg to ascertain whether and to what extent the defendants had failed to comply with their contract, and to endeavor to make the loss as light as possible, as Wm. Hyer says.

In other words, a buyer of personal property wishes to make the seller pay for the ascertainment as to whether the seller violated his contract or not, and for the endeavor to reduce the amount to be paid by the buyer to his own vendee.

Clearly without a special contract the seller would not, under the authorities hereinbefore recited, be liable for such expenditures. Nor would he under the contract "C," because:

1. This was not a reclamation by the buyers upon the plaintiffs against which alone the defendants were to save the plaintiffs harmlesss.

2. It was not a reclamation upon the cargo.

3. It was not because of a variation of the cargo from the contract, for, as we have shown, that applies only to deficiencies in the cargo in quality or quantity.

4. It was not paid to the sub-vendee by the plaintiffs, but was the employment of agents by the plaintiffs for themselves. It is true that it was in the interest of the shippers, but it was primarily in the interest of the plaintiffs, who were responsible to the sub-vendee in at least as much as they could claim from the defendants. They could not make defendants responsible for their expenditures without defendants' knowledge and consent.

### EIGHTH ASSIGNMENT.

The eighth assignment is in this language: "The court erred in admitting the testimony of W. K. Hyer as to the indemnity paid by appellees to G. Alberts, Son & Co., as shown at page 38 of the record."

The testimony of Hyer on this point was in speaking of the items composing the balance due by defendants to plaintiffs, and is as follows: "The other item ($862.80) is the amount allowed and paid to buyers in final settlement of their claim for damages for breach of contract. The difference between defendants' invoice price and our invoice price is profits $2,545.79 minus $862.80 paid as indemnity. I do not know what Alberts' Sons & Co. would have made. We paid them £179:15. sterling as indemnity." The burden was on the plaintiff to show not only a claim against the defendants, but to show the amount of the claim legally due. It appears from the foregoing testimony that the plaintiffs claim to hold defendants in the sum of $862.80 for money paid by plaintiffs to the buyers from the plaintiffs as damages for the breach of plaintiffs' contract. It was incumbent upon the plaintiffs to show that these damages were legally recoverable against the plaintiffs by the buyers, and it did not meet the bur-

den upon them to show that they had paid a lumping sum as damages, without showing what those damages were. The only measure of damages established between the plaintiffs and their buyers was, so far as this testimony develops, the assurance of the buyers in their demands and the flexibility of the plaintiffs in their submission. The measure was not the legal measure (which has been heretofore stated), nor does it appear from this testimony that it was either a reclamation or a just reclamation. The testimony was not accompanied with an offer to make the items specific, and in the absence of any showing or an offer to show that the indemnity was such as could have legally been demanded by the buyers from the plaintiffs, the evidence should have been excluded.

### NINTH ASSIGNMENT.

This assignment is in the following language: "The court erred in admitting the testimony of W. K. Hyer as to the profits which would have been made by appellees on their sub-contract with G. Alberts, Sons & Co., as shown at page 38 of the record."

The testimony of this witness upon this point is contained in that set forth in the discussion of the last assignment.

By it is shown that of the amount recovered by the plaintiffs $1,682.99, was for the difference between the defendants' invoice (the purchase price of plaintiffs from defendants) and plaintiffs' invoice price (the price contracted to be paid by G. Alberts, Sons & Co. to plaintiffs). This sum, with the $862.80 indemnity, and interest, was the exact sum demanded by the declaration and given by the jury. The statement annexed to the declaration and the testimony of W. K. Hyer, of which the statement is made a part by a reference to it, contains the only statement of the loss of the

plaintiffs. It is clear that the difference between the price at which plaintiffs bought and price at which they had contracted to sell was not the legal measure of damages. McAlpin vs. Lee, 12, Conn. 29; Fox vs. Harding, 7 Cushing, 522 and 523; Stacey vs. N. Y. & H. R. R. Co., 6 N. Y. 90.

But the legal measure is the difference between the price at which they bought and the market value at the time and place of delivery.

There was no legal warrant for the allowance of the profits, and the testimony should not have been admitted.

#### ELEVENTH ASSIGNMENT.

This assignment relates to the refusal of the court to give the special instructions asked for by defendants. We discuss the instructions seriatim:

1, 1½ & 2. The error of the court in refusing these special instructions is shown by the following authorities: Hare on Contracts, 547; Reed vs. Randall, 29 N. Y. 358; Day vs. Pool, 52 N. Y. 416; Studer vs. Bleistein, 115 N. Y. 316.

In case of an express warranty, or of fraud, the rule may be otherwise, but in case of an executory sale without express warranty and without fraud, the vendee must offer to return goods not conforming to the description of the property sold, or else he can not demand a reduction in price. See further on this subject: Cook vs. Gray, 2 Bush, 121; Delafield vs. DeGrauw, 3 Keyes, 367; Warner vs. Van Pelt, 4 E. D. Smith, 202.

2 and 2½: The error in refusing these instructions is shown by applying the principles discussed in previous assignments.

3. This instruction merely asserted the general proposition that not a single resale, but the market price

at the time and place of delivery furnished the measure of damages, and the instruction should have been given.

4, 5, and 7. These instructions merely ask the court to declare the law to be that there was a legal measure of damages, and that third persons without the consent of the seller could not by agreement substitute a conventional measure for a legal one. There can be no question about this proposition, and it was material here, because the evidence is that Shadbolt & Son and G. Alberts, Sons & Co. agreed that they would abide by the rejection and deductions made by the Belgian Government; that the government had rejected some, cut others and made deductions in quantity upon others without the consent of defendants. See Gheysen's testimony and the statement attached to the re-direct testimony of W. K. Hyer. The conduct shown by the testimony, and which would have been declared unlawful by the giving of these instructions, made a compliance with the contract of G. Alberts, Sons & Co. and the Belgian Government a test of the compliance by defendants with their contract with the plaintiffs. But while we have an identity between the contracts of plaintiffs and defendants with the contract of plaintiffs and G. Alberts, Sons & Co., we have no such identity shown as to the contract between G. Alberts, Sons & Co., with the Belgian Government. What that contract was is not even shown, and yet the defendants are mulct because that contract is not complied with.

10. The principles of law applicable to this have been discussed under the 9th assignment.

### TWELFTH ASSIGNMENT.

This assignment is for error in overruling motion for a new trial. This motion included nearly all the

grounds covered by the preceding assignments, and nothing not covered by them is left except a discussion of the inadmissibility of the charge made against de-fendants for sending a part of the cargo from the place of loading to the government warehouses so as to give the government an opportunity to accept or re-ject it.

Of course the defendants here had nothing to do with the performance by G. Alberts, Sons & Co. of their contract with the Belgian Government, nor can they be held responsible for the cost of transportation to such place. If G. Alberts, Sons & Co's contract required them to deliver at the government ware-houses, then they, and not the defendants, must pay the expense of such delivery. If the contract did not require such delivery, then the government should have inspected it, where it lay upon unloading and any transportation elsewhere by G. Alberts, Sons & Co. was gratuitous and must be paid for by them.

*John C. Avery*, for Appellees.

MABRY, C. J.:

Before considering the assignments of error insisted on by counsel for appellants, a brief statement of the issues made by the pleadings is necessary. The first special count alleges substantially that plaintiffs had a contract to deliver lumber for resale in Europe, and in order to carry out their contract, made a contract with defendants for the latter to furnish lumber iden-tical in specifications with the contract the former had to deliver lumber for resale in Europe, of which fact defendants had knowledge; that afterwards defend-ants agreed with plaintiffs, for a consideration stated, to hold them harmless against any just reclamation

upon the cargo in consequence of its not being in accordance with the contract between the parties; and that the lumber was not in compliance with said contract in particulars mentioned, and in conseqence plaintiffs had to pay just reclamation amounting to $2,545.79. The fourth special count, referred to in the accompanying statement as the third additional count, is the same as the first special count, except the consideration therein mentioned for the making of the additional contract "C" is different. The cause of action relied on in the two counts referred to is for just reclamation under contract "C." The third special count, referred to in the statement as the second additional count, alleges the making of the contract by plaintiffs for the delivery of lumber for resale in Europe, the execution of the contracts with defendants, as shown by exhibits A and B, with knowledge on their part of the purpose for procuring the lumber, the same as in the first count; and further, that defendants failed to comply with their said contract in particulars mentioned, so that when the lumber arrived in Europe at the place of its delivery it was worth much less than it would have been in the market there, and much less than it would have been under the terms of the contract for resale, the difference in value being much more than $2,545.79, but plaintiffs by great diligence and care reduced the difference to that sum. This count is upon a breach of the contracts expressed in exhibits A and B, and the damages claimed under it is the difference between the market value of the lumber in Europe and what it would have been if it had been in accordance with defendants' contracts, and also the difference in value of the lumber delivered and what it would have been under the terms of plaintiffs' contract for delivery and resale in

Europe.    The second special count, referred to in the statement as the first additional count, alleges the making of the contract by plaintiffs for the delivery of lumber for resale in Europe, the execution of the contracts with defendants, shown by exhibits A and B, with knowledge on their part of the purpose for which the lumber was procured, the same as in the first special count; and further, that defendants failed to comply with their said contracts in particulars mentioned, and that, confessing the lumber to be inferior to that required by their contract, and in consideration thereof, defendants agreed with plaintiffs to hold them harmless and fully indemnify them against all loss and damage of every description which they might sustain by reason of such difference in the lumber.  The damages alleged under this count is for marine insurance, inspection of the lumber in Europe, just reclamation and the reduced price received by plaintiffs from buyers, amounting to $2,545.79.  The pleas do not put in issue the making of the contracts represented by exhibits A, B and C, nor the purchase of the lumber by plaintiffs from defendants for delivery and resale in Europe, with a knowledge of this fact by the latter.  The making of the alleged contract set up in the count referred to in the statement as the first additional count is denied, and also the noncompliance with the terms of the contracts between the parties, and the existence of any indebtedness on the part of defendants are put in issue.

The assignments of error insisted on here relate to the admission of certain testimony given by W. K. Hyer for plaintiffs, and the refusal to give certain instructions requested by defendants.  W. K. Hyer was a member of the firm of Hyer Brothers, and testified to the making of the contracts expressed in exhibits

A and B, and that defendants were notified of the probable arrival, and of the actual arrival, in Pensacola of the vessel chartered to transport the cargo of lumber to Europe. He stated that about the time of the arrival of the vessel in the port of Pensacola, Hyer Brothers sent an inspector to the mill of defendants, which was in Escambia county, for the purpose of inspecting the lumber, and that he was sent away by defendants, and not allowed to do the inspecting. The inspector sent out by plaintiffs had been sent from Mobile, Alabama, by their European buyers, and it was claimed by defendants that he was not a licensed inspector under the laws of Florida. Another inspector was procured by plaintiffs, and still further objection was made by defendants to his inspection of the lumber. The vessel in the meantime was getting ready to receive the lumber, and at this juncture a personal interview was had between witness, representing the plaintiffs, and a member of the firm of Robinson & Co., at the mill of the latter. After examining the lumber at the mill and looking over the kind that had been rejected by the inspectors, the member of the firm of Robinson & Co. stated that with such lumber thrown out, they did not have enough to fill the bill, and asked witness what they should do about it. Witness said: "I do not know, Mr. Robinson, what we are going to do. And he knew that the money would not be paid by the buyers of the cargo unless the buyers' inspector was allowed to inspect and approve the cargo. I said, if you ship that cargo I will get out of it all that I can. He said, I will do it; he said he would stand between us and all loss. And we prepared and he signed the writing marked exhibit "C" attached to the declaration, as a result of that conversation." The conversation preceding the making of the contract was objected

to as not admissible to vary the contract. The court overruled the objection and admitted the evidence, and defendants excepted. The conversation objected to was contemporaneous with the execution of the contract shown by exhibit C, and in fact the witness says that the contract was prepared and signed at the time, as a result of the conversation. The rule is, that parol contemporaneous evidence is not admissible to contradict or vary the terms of a valid written instrument. Solary vs. Webster, 35 Fla.; 17 South. Rep. and authorities cited.

The general rule stated is not questioned by counsel for appellees, but he insists that in order to arrive at a correct meaning or application of the language of a contract relative to the subject-matter thereof, the surrounding circumstances may be considered. It is true that in arriving at the real intention of the parties, as shown by the language employed by them in a contract made, and in order to make a correct application of the terms used to the subject-matter and the objects referred to in the contract, the situation of the parties and the surrounding facts and circumstances may be considered by the court construing the contract. Solary vs. Webster, *supra*; Pensacola Gas Co. vs. Lotze's Sons & Co., 23 Fla. 368, 2 South. Rep. 609; 1 Addison on Contracts, m. p. 182. It must be borne in mind, however, that it is the language of the contract itself that the court must construe, and where the parties have deliberately employed terms to express their meaning, it is not competent to substitute, by parol, other terms and construe them. It was said in Jenkins vs. Lykes, 19 Fla. 148, S. C. 45 Am. Rep. 19, that "a written contract which is intelligible on its face must control, the parties understanding fully what the contract contains. Testimony should not be admitted to prove

that a contract, clearly expressed, means a different thing from that which is so expressed." When the parties reduce their agreement to writing, no other language employed by them in making the contract can be resorted to except that furnished by the contract itself. Dent vs. North American Steamship Co., 49 N. Y. 390. It was, in our judgment, an infraction of the rule to permit the witness to testify as to what Robinson said at the time of the making of the contract, about standing between plaintiffs and all loss. Whether the terms in the contract to hold plaintiffs harmless against any just reclamation upon cargo, mean the same thing as to stand between them and all loss, is a different thing, but it is not competent to put in evidence what the parties said at the time of making the contract.

After the execution of the contract shown by exhibit "C," defendants procured their own inspector and commenced furnishing lumber for the vessel. Pending the loading of the vessel plaintiffs discovered that the lumber was not in accordance with the specifications in contracts A and B, as they thought, and wrote several letters to defendants calling their attention to the fact that the lumber was inferior in particulars pointed out. During that time Hyer testfied that he talked the matter over several times with a member of the firm of Robinson & Co., and that member said to witness more than once that he would stand between plaintiffs and all loss. That they should not lose a cent. On cross-examination the witness testified that Robinson said "they would hold us harmless against all loss. The conversation took place while the vessel was loading, and possibly after the vessel was loaded, as we had several conversations. After we made the contract called C, we had several conversations. We

never refused to receive the lumber after making the contract C. The buyers chartered the vessel. Mr. Robinson had no contract with the buyers; his contract was with us. Mr. Robinson could not have put their lumber on board the ship unless we agreed to it. I never refused to let him put it on board, except protesting as to the character of the lumber. I was relying at that time upon contract C, and thought he would hold us harmless." Defendants' counsel moved to exclude the testimony as to the promise to hold plaintiffs harmless against all loss because it was without consideration. The refusal of the court to grant the motion was excepted to and assigned as error here.

The circumstances under which the alleged promise was made to hold plaintiffs harmless against all loss have been in part stated. A disagreement had arisen between the parties as to the quality of the lumber called for by contracts A and B, and a further agreement had been entered into in reference to the cargo of lumber, as shown by exhibit "C." This further, or additional, contract referred to the former ones, and expressly stipulated that the cargo should be shipped in accordance with contracts dated June 22nd and July 30th, 1885. Plaintiffs were under contract to furnish lumber of certain specifications to European buyers, and the defendants knew that the lumber they were to furnish was to be used by plaintiffs to supply their European purchasers. The testimony shows this. It is not questioned here that it was competent for the parties to make a further, or additional, parol agreement in reference to the cargo of lumber after the execution of the contract shown by exhibit C, the contention being that such an agreement can not be relied on unless there was a consideration to support it, and that there was none in this case. Counsel for appellees

insists that there was a consideration for the promise, and further, that if the promise to hold plaintiffs 'harmless against all loss was a new promise, it required no new consideration, as such promise was supported by the consideration in the original agreement. The authorities cited from the Wisconsin court in support of the latter position hold that the consideration existing in an original executory contract is considered as imported into any new parol modification, and that the new agreement, when made, becomes binding upon the parties without any further or new consideration. Lynch vs. Henry, 75 Wis. 631, 44 N. W. Rep. 837; Ruege vs. Gates, 71 Wis. 634, 38 N. W. Rep. 181. The general rule, that a written contract not under seal may be varied or added to by subsequent oral agreement upon a sufficient consideration as to its terms to be performed in the future, is well sustained by many authorities. Tischler vs. Kurtz Bros., 35 Fla., 17 South. Rep.; Wheeler vs. Baker, 59 Iowa, 86, 12 N. W. Rep. 767; Hastings vs. Lovejoy, 140 Mass. 261, 2 N. E. Rep. 776, S. C. 54 Am. Rep. 462; Conover vs. Stillwell, 34 N. J. Law, 54; Hasbrouck vs. Winkler, 48 N. J. Law, 431, 6 Atl. Rep. 22. It was decided in Spann vs. Baltzell, 1 Fla. 301, S. C. 46 Am. Dec. 346, that, as a general rule, a verbal agreement between the parties to a written contract, made before or at the time of the execution of such contract, is inadmissible to vary its terms or affect its construction; but, after the contract is reduced to writing, it is competent for the parties at any time before the breach of it, by a new contract, not in writing, either altogether to waive, dissolve, or annul the former agreement, or in any manner to add to, subtract from, or vary, or qualify the terms of it, but that in such cases the substituted oral agreements being considered in the light of new contracts, it is

requisite that they be made upon some new and valuable consideration. This is the view taken by this court, and it is sustained by ample authority. We are of the opinion, however, that there was sufficient consid--eration in the present case to support the promise to hold plaintiffs harmless against all loss in reference to the shipment of the cargo of lumber. In speaking of a parol modification of a written contract, the court said, in Hastings vs. Lovejoy, *supra*: "While recognizing and giving effect to the rule of law, that a cred--itor can not bind himself by a simple agreement to accept a smaller sum in lieu of an ascertained existing debt of a larger amount, because such agreement is without consideration, courts have nevertheless often declared that the rule is not to be extended beyond its precise import, and, especially if a consideration for such agreement is found to exist, of which the law can take notice, that courts will not inquire into its adequacy." In Conover vs. Stillwell, *supra*, it is said: "A consideration emanating from some injury or inconvenience to the one party, or from some benefit to the other party, is a valuable consideration." Plaintiffs were, as above stated, under contract to supply their European buyers with a certain cargo of lumber, and the latter had chartered and sent over a vessel for the purpose of transporting the lumber. While the lumber was being loaded on the vessel frequent protests were made by plaintiffs to defendants that the lumber was not such as they had agreed to furnish. By contract C defendants expressly agreed to ship the lumber in accordance with contracts A and B, and plaintiffs had the right to demand that the lumber come up to the requirements of said contracts. It was a serious detriment to plaintiffs to allow an inferior cargo to go to Europe, as they would be liable under

their contract with foreign buyers for a failure to comply with it. Plaintiffs controlled the loading of the vessel, and without their consent defendants could not have put the lumber on the ship. It is true that plaintiffs did not refuse to permit the defendants to load the vessel, but it was during the loading that the promise was made to hold plaintiffs harmless against all loss, and they had a right to rely upon such assurances and permit the cargo to go over. But it is said that plaintiffs were relying upon contract C, and can not recover upon the other agreement. It is true they were relying upon contract C, as shown by the evidence, but it does not appear that they were not also relying upon the special agreement made at the time when the protests were made that the lumber was not according to contract. It was competent for the parties to make the special contract, and if there was a consideration to support it, of which the law can take notice, its adequacy will not be closely scrutinized by the courts. In this case there was such consideration, in our judgment, and the court did not err in admitting the evidence. In this connection we state that we regard the agreements made by witness Hyer and the member of the firm of Robinson & Co. as made for and on behalf of their respective firms. In some of the conversations given the member of the firm of Robinson & Co. is represented as saying that he would protect or save harmless Hyer Brothers from all loss, and in other portions he promises for his firm. The negotiations, as is apparent, had reference to the contracts between the firms, and we so consider them.

The next exceptions to the testimony of the witness Hyer relate to the competency of the evidence as to the payment by plaintiffs of marine insurance and expenses for inspection and to adjust the loss on the

cargo in the European port. The objection is, that such items are not recoverable at all against defendants. The testimony shows that plaintiffs sold to the European buyers cash, "f. o. b.," upon satisfactory inspection by an inspector approved by them, and that had such inspection been permitted by defendants, plaintiffs would not have had to pay insurance on the cargo, as such expense would have been borne by their buyers. Nor would there have been any necessity for any inspection or adjustment of losses in Europe had the lumber been in accordance with the contracts between plaintiffs and defendants, and approved by the foreign buyers' inspector. The proof further shows that the lumber was not approved in the Pensacola port by European buyers' inspectors, and was rejected in the European market as not being in accordance with plaintiffs' contract to sell. Plaintiffs had to pay insurance on the cargo, and also expense in having lumber inspected in Europe. Under the objections we are considering, it is not claimed that the insurance and the expenses incurred by plaintiffs in Europe were unreasonable, or not established by proper evidence, or that there was not testimony sufficient showing that the lumber was not in accordance with the terms of the contracts, either between plaintiffs and defendants or the foreign buyers. There was testimony other than that of Hyer tending to show that the lumber was not according to specifications in the contracts. Whether such items of damage are recoverable under the contracts shown by exhibits A, B and C, we need not determine, as we are satisfied that it was proper to prove such damage under the special count on the promise to hold plaintiffs harmless against all loss on the cargo. We do not understand that counsel for appellants claim such items would be improper if

plaintiffs can rely upon the special promise to hold them harmless against all loss, the contention being that such promise can not be sustained, and that under the other contracts such items of damage would be improper.

Another assignment of error is, that "the court erred in admitting the testimony of W. K. Hyer as to the profits which would have been made by appellees on their sub-contract with G. Alberts, Sons & Co." The named firm were the purchasers from plaintiffs of the cargo of lumber in question. The testimony of the witness Hyer shows that part of plaintiffs' demand was the difference between the price to be paid by plaintiffs for the lumber to defendants and the price contracted to be paid to plaintiffs by G. Alberts, Sons & Co. It is insisted that the difference between the price at which plaintiffs bought and the price at which they had contracted to sell was not the legal measure of damages, but the true measure is the difference between the price at which they bought and the market value at the time and place of delivery. This, as a general rule, is a correct way of ascertaining damages, but it is not the exclusive manner in all cases. The primary object in awarding damages at common law is compensation to the injured party, but the damages allowed for this purpose must be the natural and proximate result of the wrong done. Hodges vs. Fries & Co., 34 Fla. 63, 15 South. Rep. 682. The general rule for awarding damages for a breach of a contract for the sale and delivery of personal property is the difference between the contract price and the market value at the time and place of delivery as fixed by the contract. Merritt & Son vs. Wittich, 20 Fla. 27. This is not, however, as just stated, the invariable rule in all cases. In speaking of the general rule on the subject the New-

York court said, in the case of Messmore vs. New York Shot & Lead Co. 40 N. Y. 422: "This rule, however, is changed when the vendor knows that the purchaser has an existing contract for a resale at an advanced price, and that the purchase is made to fulfill such contract, and the vendor agrees to supply the article to enable him to fulfill the same, because those profits which would accrue to the purchaser upon fulfilling the contract of resale, may justly be said to have entered into the contemplation of the parties in making the contract. This rule is based upon reason and good sense, and is in strict accordance with the plainest principles of justice. It affirms nothing more than that where a party sustains a loss by reason of a breach of a contract, he shall, so far as money can do it, be placed in the same situation, with respect to damages, as if the contract had been performed." See also on the same subject, McHose vs. Fulmer, 73 Penn. St., 365; Chicago, Burlington & Quincy R. R. Co. vs. Hale, 83 Ill., 360, S. C 25 Am. Rep., 403; Bell vs. Reynolds & Lee, 78 Ala., 511, S. C. 56 Am. Rep., 52. There is no question in the case here that plaintiffs had a contract for a resale of the cargo of lumber and that the purchase was made from defendants expressly to fulfill such contract and the latter knew it, and we think the profits which would have accrued from such resale are recoverable, especially as plaintiffs could not, as shown by the testimony, procure other lumber of like kind in the market where delivery was to be made.

The other exception to evidence insisted on here is, that "the court erred in admitting the testimony of W. K. Hyer as to the indemnity paid by appellees to G. Alberts, Sons & Co." The amount of this indem-

37

nity is $862.80, and paid by plaintiffs to their buyers on account of the failure of the lumber to come up to the requirements of the contract between them. The witness stated that the amount mentioned was what plaintiffs paid their buyers on final settlement of their claim for damages for breach of contract. It is insisted that it was incumbent upon plaintiffs to show that this sum was legally recoverable as damages against plaintiffs by their buyers, and that the burden upon them was not met by showing they paid a lumping sum without showing what it was for. It is true that it would not be sufficient for plaintiffs to show they paid a sum as damages or reclamation, without also showing what such sum was for, and that it was just and proper. There is other testimony than that of the witness Hyer as to the item paid by plaintiffs as indemnity or reclamation, and we are satisfied from an examination of it that the amount paid was just and reasonable. It is not contended in this connection that the other testimony in reference to the adjustment of the indemnity was incompetent or insufficient. It was not improper of course for the witness to testify that Hyer Brothers had paid the amount which had been awarded against them in the adjustment.

The only other exceptions insisted on by counsel for appellants relates to the refusal of the court to give certain instructions requested for defendants. The charges that assert the only correct measure of damages to be the difference between the price at which plaintiffs bought and the market value at Antwerp, are incorrect, and what has been said is sufficient to dispose of them. The rule, that in cases of executory contracts for the sale and delivery of personal property, the right to damages on the ground that the goods are not in compliance with the contract, does not survive the accept-

ance of the property by the vendee after an opportunity to ascertain the defects, unless notice is given to the vendor, or an offer to return the property, does not apply in this case. The inspection of the lumber was left entirely with defendants under contract C, and while the loading of the vessel was permitted by plaintiffs, it was done under agreement that they should be held harmless against any just reclamation and all loss. This was not a case where a purchase had been made and goods received without objection after a full opportunity had been afforded of ascertaining the defects. The difference between the present case and the cases cited by counsel for appellants from New York is shown by the case of Messmore vs. New York Shot & Lead Co., *supra.*

The charges requested, and based upon the view that plaintiffs could not recover after they had received the lumber, or a part of it, were, we think, correctly refused, on the facts of this case.

The charges, on the theory that defendants could not be bound by any agreement between plaintiffs' purchasers of the lumber and the latter's purchasers in reference to receiving the cargo, or any part of it, assert a correct proposition of law, and such charges could have been given. In the proof of the adjustment of the loss it appears that Alberts, Sons & Co., plaintiffs' purchasers, had a contract with the Belgian government to take the lumber, and in the adjustment it was arranged for the lumber that was in accordance with the contract to be forwarded to the government mentioned. The defendants could not be held liable for any loss or damages growing out of any contract between the purchasers from plaintiffs and any third parties, as such loss or damage would be too remote, and could not be said to have been in the contempla-

tion of the parties at the time of making their contract. The court did not instruct the jury that they could consider such agreement in arriving at a verdict, and from a consideration of the evidence we are satisfied that the defendants were not injured by the refusal of the court to give the instructions mentioned.

The evidence shows that $1,682.99 of the amount allowed by the jury was for marine insurance, the expenses attending the inspection of the lumber at Antwerp, and the difference between the price at which plaintiffs bought and the price at which they had contracted to sell, all of which, we have seen, were proper to be estimated by the jury, and as to the establishment of which there is no conflict in the evidence. An additional sum of $862.80, claimed by plaintiffs as indemnity, or reclamation, paid on the cargo, was allowed, and the sums mentioned make the entire amount of the verdict. Indemnity on the cargo was clearly recoverable as damages for a breach of the contracts between plaintiffs and defendants, and, as before stated, we are impressed with the view that the testimony establishes the fact that the indemnity paid by plaintiffs was just, and a proper demand against the cargo. The result is, that the verdict rendered is amply sustained by the evidence, and substantial justice has been done.

The error in admitting the evidence as to what Robinson said at the time of executing the contract "C," is harmless, for the reason that substantially the same agreement thereby sought to be established was subsequently made upon a sufficient consideration. A judgment should not be reversed for technical error where it affirmatively appears that no harm was thereby done to the party against whom it was committed. It was held by us in Jacksonville, M. & P. Ry. & Nav.

Co. vs. Warriner, 35 Fla., 197, 16 South. Rep. 898, that where the court refuses upon request to give to the jury an instruction which embodies a correct and appropriate proposition of law, but it clearly appears from the undisputed facts of the case that the verdict was amply sustained by the evidence, and if the instruction had been given it could not possibly have effected the verdict, the error will be held immaterial, and the judgment will not be reversed on that account.

The judgment in this case should be affirmed, and it will be so ordered.