THE CRACKER JACK COMPANY v. BELLE ISAAC STOMAKEN
and FRANK STOMAKEN.

160 So. 755.
Division B.
Opinion Filed April 8, 1935.
Rehearing Denied May 3, 1935.

*F. J. Heintz,* for Appellant;

*L. R. Milton,* for Appellee, Belle I. Stomaken.

ELLIS, P. J.—This is an appeal from a decree dismissing a bill of complaint after answer filed and testimony taken, which bill of complaint sought the enforcement of the lien of a mortgage executed by a married woman, who was a free dealer under the laws of Florida, upon certain lands which were part of her separate statutory property; the husband not joining with his wife in the execution of the mortgage.

Mrs. Belle Isaac Stomaken is a married woman, and in 1921 was made a free dealer by a decree of the Circuit Court for Duval County, Florida. Her husband, Frank Stomaken, was a salesman for The Cracker Jack Company, a corporation, and in October, 1931, had been in its service approximately twenty years. The Corporation has its principal place of business in the city of Chicago.

Frank Stomaken, in October, 1931, had become indebted to several persons on account of gambling debts and other obligations. His indebtedness amounted to approximately five thousand dollars. He applied to his employer, the Cor-

poration, with which he was employed, for financial assistance and the company declined to assist him or to make a loan to him, although the Corporation was willing to engage attorneys to defend Stomaken in any action which might be brought against him on account of his gambling. That, however, was not satisfactory to Stomaken, so he sent for his wife, who was in Jacksonville, and requested her to come to Chicago for a conference with the employer of her husband.

The conference resulted in an arrangement under which the company agreed to advance the money necessary to pay Stomaken's obligations upon Mrs. Stomaken's promise to repay the loan and secure the payment by executing a mortgage upon certain lands of hers in Florida. She furnished to the Corporation a list of Stomaken's debts and requested the Corporation to pay out the amount, which it agreed to advance in discharge of the listed obligations.

Upon her return to Florida she and her husband executed a negotiable promissory note for the sum of four thousand five hundred dollars, payable to the order of The Cracker Jack Company five years after date. The note was dated December 5, 1931. The note bore interest at the rate of six per centum per annum, payable semi-annually.

On the same date Mrs. Belle Isaac Stomaken executed an instrument, which bears no seal, in favor of The Cracker Jack Company, purporting to be a mortgage upon a certain parcel of land located in Duval County, Florida. Mrs. Stomaken acknowledged the execution of the instrument before a notary public, whose certificate does not recite that Mrs. Stomaken upon an examination taken and made by the officer separately and apart from her husband acknowledged the execution of the instrument freely and voluntarily without compulsion, constraint, apprehension or

fear from her husband. The certificate merely recites that Mrs. Stomaken acknowledged that she executed the instrument for the purposes therein expressed.

The instrument provides that the "mortgagors" will pay the principal and interest payable under the terms of the note; will also pay all taxes and assessments levied upon the property, keep the buildings located upon the land insured for the benefit of the mortgagee as its interest may appear, and to pay attorney's fees which the mortgagee may incur in the event of the failure of the mortgagors to execute and comply with the agreements contained in the mortgage.

In November, 1932, The Cracker Jack Company exhibited its bill to enforce the lien of the alleged mortgage, alleging that the interest which became due on the debt on the 5th day of June, 1932, amounting to $135.00 was not paid and still remains due and unpaid.

There is a prayer for the foreclosure of the lien for the amount of the whole debt based upon a clause in the instrument providing that in the event of the breach by the "mortgagors" of any of the agreements contained in the instrument or failure to pay any interest installment which may become due on the debt then the aggregate sum mentioned in the promissory note then remaining unpaid shall become due and payable forthwith.

The defendant, Mrs. Stomaken, answered the bill, averring that she was not indebted to the complainant and that the debt for which she signed the note and executed the mortgage was the debt of her husband; that the property mortgaged was her separate statutory property and her husband did not join with her in the execution of the instrument nor did she acknowledge the execution of the instrument before an officer authorized to take acknowledgments of deeds separately and apart from her husband.

The answer contained a motion to dismiss the bill on the ground that no consideration was alleged for the note and mortgage, and that the facts alleged in the bill do not set up a transaction in which the defendant, Mrs. Stomaken, could legally encumber her separate property by a mortgage in which her husband did not join.

Evidence was taken by an examiner appointed by the court. The Chancellor, upon the coming in of the testimony dismissed the bill as to Mrs. Stomaken, basing the final decree upon the findings of fact made by him; that the debt for which Mrs. Stomaken executed the note and mortgage was not her debt but the debt of her husband; that the property mortgaged was her separate statutory property; that she received no money from the complainant and her separate estate was not benefited by the transaction; that the mortgage was not executed in accordance with the provisions of Section 1 of Article XI of the Constitution and that her husband did not join with her in the execution of the mortgage and that she did not acknowledge its execution upon an examination made separately and apart from her husband.

A discussion of the evidence in the case at length will be of no avail to conclusively establish the truth as to the nature of the transaction, because deductions which may be drawn from facts are not always a certain quantity, many times depending largely upon the influence of some irregularities in the formal execution by the parties of the agreement which grows out of the conversations between them but which in reality has no relation to the merits of the controversy.

. It is the conclusion of the Court that the Chancellor erred in finding the fact to be that the debt evidenced by the joint

note of Mr. and Mrs. Stomaken and the mortgage executed by Mrs. Stomaken was the debt of Mr. Stomaken.

The latter owed many debts, it is true. He became indebted to many persons through his careless and profligate course of life, but those debts were not due to the complainant, The Cracker Jack Company, his employer; nor did the company undertake to pay them for him at his request. On the contrary it refused to do so. It declined to advance any money to him for that purpose. It was only when Mrs. Stomaken arrived in Chicago, at her husband's request, and interviewed the complainant through its officers, in which she appealed to that company to advance to her the money necessary to redeem the various outstanding obligations of her husband, that she promised to repay it and to secure the redemption of the promise by executing to the complainant a mortgage upon certain land which she held in her own right. That agreement was carried out by her to the extent of executing the note and mortgage. The fact that her husband joined with her in the execution of the note did not change the character of the debt as her personal obligation, nor her status as the principal debtor.

She was a free dealer and was as capable of entering into a contract of that character as any person *sui juris*. There was a consideration for her contract. It was founded upon her procurement of the complainantt's promise to supply the money to relieve her husband from the embarrassing financial situation in which he found himself and the loss to the complainant which it incurred by supplying the money which it promised to supply. See Tampa Northern R. R. Co. v. City of Tampa, 104 Fla. 481, 140 South. Rep. 311; Henderson v. Kendrick, 82 Fla. 110, 89 South. Rep. 635; Lines v. Smith, 4 Fla. 47; Robinson & Co. v. Hyer Brothers, 35 Fla. 544, 17 South. Rep. 745.

Indeed the promise of Mrs. Stomaken was not a promise to pay the debt of another. It was as much her own personal debt as if she had sold her property and had taken the proceeds to pay the various creditors of her husband. She assumed to assist him in extricating himself from the embarrassing financial situation to which his wasteful extravagance had brought him.

It was of no consequence that Mrs. Stomaken received no money into her possession from the complainant or that her separate estate was not benefited by the transaction. She procured the complainant's promise, which it redeemed, to pay out a certain sum of money upon her direction. That it went to pay husband's obligations did not alter the character of her promise or the binding effect of it. The debt which she created by the transaction, the obligation which she assumed, was in no sense the debt or obligation of her husband. The fact that the money procured by her was paid out upon her instructions to pay her husband's obligations, gambling and of other character, did not make him the debtor to complainant. The Chancellor's findings in this matter were erroneous and the error is made clearly to appear from the record.

Section 1 of Article XI of the Constitution does not apply, as the separate property of Mrs. Stomaken is not sought to be made liable for her husband's debts within the meaning of the section. She dealt with her property as a free dealer. She could bind herself in all respects as if she were unmarried. She was as fully capacitated legally to dispose of her property as if she were a *feme sole*. Secs. 5024-5027 C. G. L. 1927; Lerch v. Barnes, 61 Fla. 672, 54 South. Rep. 763; Commercial Bldg. Co. v. Parslow, 93 Fla. 143, 112 South. Rep. 378; Pierson v. Reinhardt, 101 Fla. 1392, 133 South. Rep. 553, in which Mr. Justice Brown

expressed the view that it was not the purpose of Article XI of the Constitution to prevent the Legislature from making laws dealing with the contractual rights and powers of married women so long as there were no conflicts with the provisions of the Article mentioned.

The decree appealed from is reversed.

TERRELL and BUFORD, J. J., concur.

WHITFIELD, C. J., and BROWN and DAVIS, J. J., concur in the opinion and judgment.